Nos. 101,084
101,085

STATE OF KANSAS, *Appellee*, v. JOSE GALAVIZ, *Appellant*.

(291 P.3d 62)

Opinion filed December 28, 2012.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, argued the cause, and *Carl Folsom, III*, of the same office, was on the brief for appellant.

*Terry J. Malone*, county attorney, argued the cause, and *David Belling*, deputy county attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: In this appeal involving a probation revocation, Jose Galaviz argues his attorney's position as the guardian ad litem for the victim of one of Galaviz' crimes created a per se conflict of interest that denied Galaviz his right to effective assistance of counsel at his probation revocation proceeding. Galaviz, citing *State v. Jenkins*, 257 Kan. 1074, 898 P.2d 1121 (1995), argues this conflict so offended his rights as guaranteed by the Sixth Amendment to the United States Constitution that reversal is automatic and he is not required to show that the conflict had an adverse effect on his attorney's representation.

The Court of Appeals rejected this argument. Relying on the United States Supreme Court's decision of *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002), the Court of Appeals held Galaviz had to show the multiple representation had an adverse effect on the attorney's representation of Galaviz because Galaviz did not object to the multiple representation. Further, the Court of Appeals concluded Galaviz did not meet his burden and was not entitled to relief. See *State v. Galaviz*, Nos. 101,084 and 101,085, 2009 WL 5206238, at *3-4 (Kan. App. 2009) (unpublished opinion).

In his petition seeking this court's review of the Court of Appeals' decision, Galaviz argues the Court of Appeals erred in not following *Jenkins*. To analyze that argument, we compare *Mickens* and *Jenkins*, both of which apply the Sixth Amendment, and conclude the United States Supreme Court's analysis controls and that *Mickens* effectively overrules portions of *Jenkins*. Under *Mickens*, a defendant is not entitled to automatic reversal based on the defense attorney's conflict of interest if there was no timely objection to the attorney's representation. Rather, as the Court of Appeals concluded, Galaviz must establish that the conflict of interest had an adverse effect on his attorney's representation of him. Never-

theless, we disagree with the Court of Appeals' conclusion that this determination can be made on the record on appeal. We conclude a remand is appropriate to determine whether Galaviz can meet his burden under *Mickens*.

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal follows a district court's decision to revoke Galaviz' probation in two cases. In one of the cases, Galaviz had pleaded guilty to a charge of aggravated indecent liberties with a child under the age of 14. In the second case, he had pleaded guilty to possession of methamphetamine. At the time of the original sentencing, the State, consistent with its plea agreement with Galaviz, recommended a downward dispositional departure from a presumptive prison sentence to probation. The court accepted the parties' sentencing recommendation and placed Galaviz on probation.

Fifteen months later, a probation revocation proceeding was initiated. The court appointed Mark Cowell to represent Galaviz. Initially, Galaviz denied the State's allegations. Before the evidentiary hearing was held, Galaviz was found guilty of new offenses, and the State amended its motion to revoke probation by adding the new convictions as additional probation violations. Galaviz then admitted he had violated conditions of his probation, and the court revoked probation.

At the subsequent disposition hearing, Cowell, on Galaviz' behalf, urged the court to reinstate probation, arguing in part:

"Now, Your Honor, I was not the attorney who represented Mr. Galaviz in [the aggravated indecent liberties] case and I think that's specifically because I was the guardian *ad litem* of the child who—or the young lady who was the victim, and as it turned out, this young lady—I did notice something about her. I'm not trying to say that it is appropriate ever to have contact with a young lady, but she certainly was among the more willing young ladies."

In addition, Cowell argued that Galaviz had attended sexual offender treatment, completed community service, completed a substance abuse program, and remained drug free. Cowell also noted that Galaviz had a job if he was released from jail.

The district court rejected Galaviz' request to be reinstated to probation, citing Galaviz' extensive criminal history. The court remanded Galaviz to the Kansas Department of Corrections to serve the prison sentences that had been announced at the original sentencing hearings in the two cases.

Regarding the record relating to Cowell's conflict of interest, Cowell's brief reference to his role as the guardian ad litem for the victim in the aggravated indecent liberties case was the first and only reference in the record to the circumstances that gave rise to Galaviz' conflict of interest argument. Neither Cowell nor Galaviz objected, and the district court did not make any inquiry. Thus, as the State argues, there is no information in the record regarding the type of proceeding that led to Cowell's appointment as the victim's guardian ad litem; the date on which Cowell was appointed to serve as the guardian ad litem; the date, if any, on which Cowell's obligations as guardian ad litem terminated; or the relationship, if any, between the two proceedings.

*Court of Appeals' Decision*

Galaviz appealed the district court's decision to revoke his probation and, for the first time, argued that Cowell had a conflict of interest that required reversing the decisions to revoke probation and to sentence Galaviz to prison. Although Galaviz did not object to Cowell's representation during the district court proceeding, in his arguments to the Court of Appeals he claimed the facts contained in the record were sufficient for an appellate court to resolve the issue. As we have noted, Galaviz relied on *Jenkins*, 257 Kan. 1074, to support his argument that he only needed to show there was an active conflict the district court knew or should have known about and the district court failed to inquire into the conflict. Alternatively, Galaviz claimed there was evidence that the conflict of interest had an adverse effect on Cowell's performance.

The Court of Appeals rejected Galaviz' arguments and affirmed the district court. The appellate court recognized that Galaviz had a right to effective assistance of counsel in his probation revocation proceeding, which means he had a right to representation free from conflicts of interest. *Galaviz*, 2009 WL 5206238, at *2. To show

there was a violation of this right, the Court of Appeals applied a two-step process.

First, citing *Mickens*, 535 U.S. 162, the Court of Appeals required Galaviz to show that Cowell "actively represented conflicting interests." *Galaviz*, 2009 WL 5206238, at *2. In making this determination, the Court of Appeals examined "the ethics rules that govern lawyer conduct [and] provide that a lawyer may not undertake a representation that involves a concurrent conflict of interest." *Galaviz*, 2009 WL 5206238, at *2-3 (citing Kansas Rules of Professional Conduct [KRPC] 1.3 [2009 Kan. Ct. R. Annot. 426] [diligence]; KRPC 1.7 [2009 Kan. Ct. R. Annot. 472] [conflict of interest; current clients], and KRPC 1.9 [2009 Kan. Ct. R. Annot. 490] [conflict of interest; duties to former clients]). These rules established that Cowell had conflicting concurrent duties to the victim and Galaviz, meaning Galaviz had met his burden of establishing an active conflict. See *Galaviz*, 2009 WL 5206238, at *2-3.

This, the Court of Appeals concluded, meant the district court had a duty to inquire into the conflict of interest and abused its discretion by failing to do so. Nevertheless, this failure did not mandate reversal because, under *Mickens*, there was no objection to Cowell's representation and "reversal is automatic 'only where defense counsel is forced to represent codefendants over his timely objection.' " *Galaviz*, 2009 WL 5206238, at *3 (quoting *Mickens*, 535 U.S. at 168). If there was no objection, according to the Court of Appeals, "a defendant must show that the conflict of interest adversely affected his or her counsel's performance before reversal is appropriate." *Galaviz*, 2009 WL 5206238, at *3 (citing *Mickens*, 535 U.S. at 174, and *State v. Carter*, 284 Kan. 312, 321, 160 P.3d 457 [2007]).

Hence, the Court of Appeals applied the second step of requiring Galaviz to establish that the conflict had an adverse effect on Cowell's performance. After examining the record of the probation revocation proceeding and determining there was a sufficient record for making the evaluation, the Court of Appeals concluded the conflict did not adversely affect Cowell's performance. In fact, according to the Court of Appeals, Cowell's actions supported, rather than undermined, Galaviz' request to remain on probation. Thus,

the Court of Appeals affirmed the district court's decision to revoke probation and sentence Galaviz to prison. *Galaviz*, 2009 WL 5206238, at *4.

Galaviz filed a petition for review, which this court granted. We have jurisdiction under K.S.A. 20-3018(b) and K.S.A. 22-3602(e).

## ANALYSIS

As noted, Galaviz asserts his right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right, made applicable to the states through the Fourteenth Amendment to the United States Constitution, requires more than the presence of an attorney; it guarantees the right to effective assistance from the attorney. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); *Avery v. Alabama*, 308 U.S. 444, 446, 60 S. Ct. 321, 84 L. Ed. 377 (1940); *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009). The purpose of the effective assistance guarantee "is simply to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689. To fulfill this function, "counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." *Strickland*, 466 U.S. at 688; see *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) (criminal defendant has constitutional right to "representation that is free from conflicts of interest").

The Sixth Amendment right to counsel attaches on the filing of formal charges or following arraignment when a person is arrested pursuant to a warrant. See *Brewer v. Williams*, 430 U.S. 387, 398, 97 S. Ct. 1232, 51 L. Ed. 2d 424, *reh. denied* 431 U.S. 925 (1977); *State v. Appleby*, 289 Kan. 1017, 1044, 221 P.3d 525 (2009). However, probation revocation proceedings are not considered a part of a criminal prosecution and, therefore, not all constitutional trial rights apply. See *Gagnon v. Scarpelli*, 411 U.S. 778, 786-87, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). Thus, a threshold question in this case is whether Galaviz is justified in relying on his rights under the Sixth Amendment.

The parties have not discussed this threshold issue; Galaviz simply asserted his Sixth Amendment right to conflict-free counsel without citing any authority establishing that the right applies to Galaviz' probation revocation proceeding, and the State did not contest his assertion. The Court of Appeals, without referring specifically to the Sixth Amendment, stated: "A defendant has a constitutional right to be represented by counsel in probation-revocation hearings." *Galaviz*, 2009 WL 5206238, at *2. Even though the question of whether the Sixth Amendment applies was not made an issue by the parties, we begin our analysis with this threshold question because ignoring the question might cause confusion in future cases, this court has not previously decided the issue, and its outcome can dictate whether Galaviz can make his ineffective assistance of counsel claim.

*Sixth Amendment and Probation Revocation Proceedings*

For its part, the Court of Appeals in concluding there was a constitutional right to counsel in probation revocation proceedings cited *State v. Billings*, 30 Kan. App. 2d 236, 238, 39 P.3d 682 (2002). *Galaviz*, 2009 WL 5206238, at *2. In *Billings*, a panel of the Court of Appeals pointed out that "[t]he Supreme Court of the United States has determined that revocation of probation is not part of a criminal prosecution and, therefore, the full panoply of rights due a defendant in a criminal case is not applicable to a probation revocation proceeding." *Billings*, 30 Kan. App. 2d at 238 (citing *Gagnon*, 411 U.S. at 786, and *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 [1972]). The *Billings* court then listed several rights that do apply, including the right to the assistance of counsel. *Billings*, 30 Kan. App. 2d at 238. To support this unequivocal statement of the right to counsel, the *Billings* court cited *Black v. Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985).

The United States Supreme Court was not this absolute in *Black*, however, stating that a "probationer has a right to the assistance of counsel *in some circumstances*." (Emphasis added.) *Black*, 471 U.S. at 612 (citing *Gagnon*, 411 U.S. at 790). Although the *Black* Court did not expand on the circumstances in which the right

would attach, the Court had engaged in a more extensive discussion of the circumstances in *Gagnon*. There, the Supreme Court held that right to counsel in a probation revocation proceeding arises from the Due Process Clause of the Fourteenth Amendment rather than the Sixth Amendment and "that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Gagnon*, 411 U.S. at 789-90.

In Kansas, the legislature disposed of the need for this case-by-case determination by enacting a right to counsel when a defendant is arrested for an alleged probation violation. As codified at K.S.A. 22-3716(b), which deals generally with the procedures for probation revocation proceedings, the legislature provided an unqualified right, stating the defendant "shall have the right to be represented by counsel and shall be informed by the judge that, if the defendant is financially unable to obtain counsel, an attorney will be appointed to represent the defendant." Hence, under *Gagnon*, a defendant in Kansas, including Galaviz, who is alleged to have violated the terms and conditions of probation has a due process right to effective assistance of counsel, which means conflict-free counsel.

Without recognizing that Galaviz' right to conflict-free counsel does not arise from the Sixth Amendment, Galaviz cites to and relies on cases applying the Sixth Amendment's guarantee of effective assistance of counsel. See *Jenkins*, 257 Kan. 1074. He does not cite a state law basis. Nevertheless, Galaviz' reliance is partially justified by the United States Supreme Court's decision in *Wood*, 450 U.S. 261.

In *Wood*, the United States Supreme Court considered the right to counsel in the context of probation revocation proceedings arising after two probationers failed to pay their fines in a case where they were found guilty of distributing obscene materials by selling products at their place of employment. They were represented by a single attorney who was paid for by their employer; the attorney also represented the employer. The Court concluded that under Georgia law a defendant facing a parole or probation revocation

had a right to counsel under the Due Process Clause of the Fourteenth Amendment. *Wood*, 450 U.S. at 271 (citing *Gagnon*, recognizing right to counsel under Georgia statute, and also observing revocation proceeding was complex and difficult to develop and present). The *Wood* Court then stated: "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood*, 450 U.S. at 271. In considering whether the probationers' right to effective assistance of counsel may have been violated, the *Wood* Court discussed and relied on two Sixth Amendment right to counsel decisions that form the basis for the Court's later decision in *Mickens—Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), and *Holloway v. Arkansas*, 435 U.S. 475, 481, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).

Likewise, in other postconviction situations, this court has recognized that even though a defendant did not have a Sixth Amendment right to counsel, when there is a statutory right to the appointment of counsel, the appointed attorney " '*must be effective and competent. Otherwise, the appointment is a useless formality.*' " *Brown v. State*, 278 Kan. 481, 484, 101 P.3d 1201 (2004) (quoting *Cullins v. Crouse*, 348 F.2d 887, 889 [10th Cir. 1965]). Hence, this court has recognized a criminal defendant could obtain a remedy pursuant to K.S.A. 60-1507 for a claim of ineffective assistance of counsel in a civil postconviction proceeding. *Brown*, 278 Kan. at 484.

These authorities lead us to conclude a Kansas criminal defendant has a constitutional right to effective assistance of counsel in a probation revocation proceeding under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. This right includes the right to conflict-free counsel. Even though the source of this right is not the Sixth Amendment to the United States Constitution, cases applying the effective assistance of counsel guarantee of the Sixth Amendment can be used to analyze Fourteenth Amendment ineffective assistance of counsel claims because the governing principles and policies are coextensive. Consequently, Galaviz was justified in relying on Sixth Amendment

cases. Hence, although we consider Galaviz' right to conflict-free counsel to arise under the Fourteenth Amendment rather than the Sixth Amendment, we conclude he is entitled to relief if he can meet his burden.

*Galaviz' Burden: Step One—Is There An Active Conflict of Interest?*

Regarding that burden, as we have noted, Galaviz' primary argument in his petition for review is that the Court of Appeals, in rejecting his claim, erred by failing to apply this court's decision in *Jenkins*, 257 Kan. 1074. This court held, in part:

"[W]here the trial court was on notice that defense counsel represented the defendant and the key prosecution witness against the defendant, and was on notice that the defendant had not waived this conflict of interest, the trial court had an independent duty to inquire about the conflict. Failure of the trial court to inquire under these circumstances requires reversal of the defendant's convictions. Under these circumstances, prejudice to the defendant is presumed." *Jenkins*, 257 Kan. 1074, Syl. ¶ 6.

Under this holding, Galaviz argues he is not required to establish that Cowell's representation was adversely affected by the conflict as required by the Court of Appeals. Rather, according to Galaviz, he need only establish there was a conflict of interest, the district court was aware of the conflict, and the court failed to inquire regarding the conflict.

The State insists that there is not an active conflict of interest, primarily because the victim did not testify and because the record does not establish concurrent representation or reveal what information, if any, Cowell may have learned about the crime from the victim. This argument ignores the fact that the record indicates Cowell revealed information about the victim gained from his representation as her guardian ad litem when he told the court he had "noticed[d] something about her. . . . [S]he certainly was among the more willing young ladies."

Further, although the State is correct that the record does not establish whether Cowell's representation as a guardian ad litem had terminated before Galaviz' probation revocation proceeding, attorneys owe ethical obligations to both former and current clients

and an obligation to avoid representing clients where there is a conflict of interest with either former or current clients. See KRPC 1.7(a) (2011 Kan. Ct. R. Annot. 484) (conflict of interest; current clients); KRPC 1.9(a) (2011 Kan. Ct. R. Annot. 502) (conflict of interest; duties to former clients). While there are unique considerations that arise because Cowell acted as the victim's guardian ad litem, neither party discusses the potential implications.

Nevertheless, the Court of Appeals found that these duties established a conflict of interest, stating:

"[I]t takes little effort to envision substantial, potential conflicts of interest—Cowell had to have learned *some* confidential information during his representation of the victim. Absent the victim's informed consent in writing, Cowell had a duty to keep that information to himself, but he also had a duty to locate any information that could help Galaviz.

"Even after Galaviz admitted violating his probation, the district court still retained discretion to decide whether to revoke Galaviz' probation or to give him another chance at probation. [Citation omitted.] Thus, Cowell needed to paint Galaviz in the best possible light as the district court decided whether to give him another chance at probation or send him to prison. Cowell's responsibilities to both the victim and the offender of the same crime created a substantial risk that his ability to represent Galaviz in the probation-revocation proceedings would be materially limited by his continuing responsibilities to the victim." *Galaviz*, 2009 WL 5206238, at *2.

We agree with the Court of Appeal's analysis on this point.

*Step Two: Does the Conflict Require Reversal?*

Given the conclusion that there was an active conflict of interest arising from Cowell's multiple representation of the victim and Galaviz, we are back to Galaviz' argument that automatic reversal is mandated by this court's decision in *State v. Jenkins*, 257 Kan. 1074, 898 P.2d 1121 (1995). This leads us to the critical question in this appeal of whether *Jenkins* remains valid in light of subsequent decisions of the United States Supreme Court, including *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002), which was decided by the United States Supreme Court approximately 7 years after *Jenkins*. While the Court of Appeals cited *Jenkins*, it did not discuss its holdings or facts or determine if it was consistent with *Mickens*.

The possibility that *Mickens* overruled *Jenkins* arises because the United States Supreme Court's decisions control the application of the United States Constitution and *Jenkins* was decided based on the right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and not on Kansas law. See *State v. Scott*, 286 Kan. 54, 91, 183 P.3d 801 (2008) (Under Article VI of the United States Constitution, " 'the interpretation placed on the Constitution and laws of the United States by the decisions of the United States Supreme Court is controlling upon state courts and must be followed.' "); *Jenkins*, 257 Kan. at 1075 (Jenkins "argued before the Court of Appeals that his Sixth Amendment right to effective assistance of counsel was violated because of his trial counsel's conflict of interest.).

Hence, *Jenkins* must be read in harmony with *Mickens* and other decisions of the United States Supreme Court. Consequently, we will discuss *Mickens* and *Jenkins*, reconcile them, and apply that reconciliation to the facts of this case.

Mickens v. Taylor

In *Mickens*, the United States Supreme Court answered the question of "what a defendant must show in order to demonstrate a Sixth Amendment violation where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known." *Mickens*, 535 U.S. at 164. The issue arose several years after Mickens had been convicted of capital murder when, during a postconviction habeas proceeding, Mickens first learned his trial attorney had also represented the murder victim in a criminal case that was pending at the time Mickens allegedly murdered the victim.

The facts of the multiple representation were then discovered. The victim was charged with a crime and had a pending criminal case at the time he was murdered. Upon the victim's death, a judge entered an order dismissing the charges against the victim. The next business day, the same judge appointed an attorney to represent Mickens. The appointed attorney was the same attorney who had been representing the victim in his criminal matter. The at-

torney did not disclose to the court, his cocounsel, or Mickens that he had been representing the victim at the time of the murder.

In defining Mickens' burden in light of those facts, the Supreme Court distinguished three categories of ineffective assistance of counsel claims under the Sixth Amendment. The first category includes cases in which it is claimed that the attorney's performance was so deficient that the defendant was denied a fair trial. The second category applies when the assistance of counsel was denied entirely or denied at a critical stage of the proceeding. The third category includes situations where the defendant's attorney "actively represented conflicting interests." *Mickens*, 535 U.S. at 166.

Regarding the first category of an attorney's deficient performance, the *Mickens* Court explained that the test for establishing a Sixth Amendment violation was defined in *Strickland*, 466 U.S. at 687. The *Mickens* Court referred to this standard as the "general rule" and explained that a defendant has the burden to establish (1) the attorney's performance was deficient and (2) " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Mickens*, 535 U.S. at 166 (quoting *Strickland*, 466 U.S. at 694); see *State v. Gleason*, 277 Kan. 624, 643-44, 88 P.3d 218 (2004).

The second category creates an "exception to this general rule," known as the *Cronic* exception, because the complete denial of the assistance of counsel or the denial of counsel at a critical stage of a proceeding presents " 'circumstances of [such] magnitude' " that "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." *Mickens*, 535 U.S. at 166 (citing *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 [1984]). Given these exceptional circumstances, a defendant is "spared . . . the need of showing probable effect upon the outcome." *Mickens*, 535 U.S. at 166. Instead, a court can presume prejudice. *Mickens*, 535 U.S. at 166 (citing *Cronic*, 466 U.S. at 658-59); see, *e.g.*, *Edgar v. State*, 294 Kan. 828, 839-43, 283 P.3d 152 (2012) (discussing the *Cronic* exception).

The third category—where the defendant's attorney actively represented conflicting interests—is more nuanced. The *Mickens* Court recognized that when a defendant's attorney actively rep-

resents conflicting interests there "may" be " 'circumstances of [such] magnitude' " that the "likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." *Mickens*, 535 U.S. at 166 (citing *Cronic*, 466 U.S. at 658-59). In determining when such a circumstance exists, the Court separated conflict cases into three subcategories. All three conflict-of-interest subcategories share a starting point—the defendant must establish that his or her attorney had an active conflict of interest. Beyond that, there are distinguishing points.

The first distinction relates to the temporal relationship of the multiple representations. The first two subcategories arise where the multiple representations are concurrent. The third arises if the multiple representations are successive or if the conflict arises because of the attorney's personal or business interests. See *Mickens*, 535 U.S. at 167-76; *Moss v. United States*, 323 F.3d 445, 455 n.15, 459 (6th Cir.) (distinguishing between multiple concurrent representation and successive representation; multiple concurrent representation includes representation that is "joint and dual," which refers "to simultaneous representation occurring in the same proceeding" and "multiple representation," which "refers to simultaneous representation in separate proceedings"; "[s]uccesive representation occurs where defense counsel has previously represented a co-defendant or trial witness"), *cert. denied* 540 U.S. 879 (2003).

A second distinction between the subcategories depends on whether an objection to the multiple representations is made before or during the proceeding. See *Mickens*, 535 U.S. at 168-69. Closely related are distinctions regarding the district court's burden of inquiry in each circumstance. See *Mickens*, 535 U.S. at 173-76.

Recognizing these distinctions and placing a case in the appropriate subcategory is essential to the determination of the test to be applied. See *Mickens*, 535 U.S. at 167-76. As we further explain these distinctions and the applicable tests, we will refer to the first of these subclassifications as the automatic reversal exception, the second as the adverse effect exception, and the third as the *Mickens* reservation.

The automatic reversal exception derives from *Holloway*, 435 U.S. at 475. It applies when a criminal defendant or his or her attorney voices a timely objection to the multiple concurrent representations of clients with antagonistic interests and the district court fails to investigate the conflict. *Mickens*, 535 U.S. at 168 (citing *Holloway*, 435 U.S. at 488). Itemizing these requirements, there are three characteristics that cases in this automatic reversal category must have: (1) multiple concurrent representation; (2) a timely objection, meaning an objection before or during the proceeding; and (3) a failure of the district court to inquire and determine there is no conflict, *Mickens*, 535 U.S. at 168 (quoting *Holloway*, 435 U.S. at 488, for its holding that "whenever a trial court improperly requires joint representation over timely objection reversal is automatic").

When these three characteristics are present, according to the *Mickens* Court, a presumption of prejudice is warranted because the situation is "inherently suspect, and because counsel's conflicting obligations to multiple defendants 'effectively sea[ls] his lips on crucial matters' and make[s] it difficult to measure the precise harm arising from counsel's errors." *Mickens*, 535 U.S. at 168 (quoting *Holloway*, 435 U.S. at 489-90). Also, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." *Holloway*, 435 U.S. at 489-90. The record in joint representation cases will ordinarily not memorialize mistakes of omission as it does affirmative instances of trial error, so for a court to evaluate the existence and effect of such mistakes of omission would entail "unguided speculation." *Holloway*, 435 U.S. at 490-91. Consequently, as when the *Cronic* exception applies, reversal is automatic unless the district court has determined there is no conflict. *Mickens*, 535 U.S. at 168 (citing *Holloway*, 435 U.S. at 488); see *Gleason*, 277 Kan. at 650.

The second subcategory, which derives from *Cuyler*, is the adverse effect exception. This exception applies when there is (1) an active conflict of interest because of concurrent representation of codefendants but (2) there was no objection to the conflict of interest before or during the proceeding. In such a situation, "a defendant must demonstrate that 'a conflict of interest actually af-

fected the adequacy of his representation.' " *Mickens*, 535 U.S. at 168 (quoting *Cuyler*, 446 U.S. at 348-49); see *Gleason*, 277 Kan. at 650. The *Mickens* Court took care to differentiate the burden under the adverse effect exception from the *Strickland* test, indicating under the adverse effect exception "prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown." *Mickens*, 535 U.S. at 172-73. Later in the opinion, the *Mickens* Court reiterated that a defendant's burden does not rise to the level of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984), test that requires "a showing of probable effect upon the outcome of the trial." *Mickens*, 535 U.S. at 174.

The third subcategory of cases, the *Mickens* reservation, arises in situations where a conflict is "rooted in counsel's obligations to *former* clients" or "counsel's personal or financial interests." *Mickens*, 535 U.S. at 174. We refer to this subcategory as the *Mickens* reservation because, although the Court recognized the potential conflicts in such situations, it reserved for another case the consideration of a test to be applied to determine if a defendant is entitled to relief. The Court stated that whether the adverse effect exception stated in *Cuyler* "should be extended to such cases remains, as far as the jurisprudence of this Court is concerned, an open question." *Mickens*, 535 U.S. at 176. In place of the adverse effect exception, the Court indicated the *Strickland* test might apply. *Mickens*, 535 U.S. at 176.

The fact that successive representation or personal interests in a case might raise ethical issues for the attorney was not a sufficient reason to apply the adverse effect exception, the Court concluded, because "[n]ot all attorney conflicts present comparable difficulties." *Mickens*, 535 U.S. at 175. The Court elaborated on the distinction, stating:

"This is not to suggest that one ethical duty is more or less important than another. The purpose of our *Holloway* and [*Cuyler v.*] *Sullivan* exceptions from the ordinary requirements of *Strickland*, however, is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations where *Strickland*

itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel. See *Nix v. Whiteside*, 475 U.S. 157, 165[, 106 S. Ct. 988, 89 L. Ed. 2d 123] (1986) ('[B]reach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel'). In resolving this case on the grounds on which it was presented to us, we do not rule upon the need for the [*Cuyler v.*] *Sullivan* prophylaxis in cases of successive representation." *Mickens*, 535 U.S. at 176.

In reserving the question, the *Mickens* Court acknowledged that the facts presented a successive representation question—the charges against the victim had been dismissed before the attorney was appointed to represent Mickens. Yet, the Court concluded it did not need to resolve the question because the case had been argued on the assumption that Mickens would be required to show defective performance, but he would not be required "in addition (as *Strickland* does in other ineffectiveness-of-counsel cases), [to show] a probable effect upon the outcome of trial." *Mickens*, 535 U.S. at 174. Mickens had been unable to meet that burden. *Mickens*, 535 U.S. at 173-74.

In explaining the three conflict-of-interest subcategories, the *Mickens* Court also discussed a district court's duty to inquire into a potential conflict of interest. As to the first subcategory, the *Mickens* Court reaffirmed its holding in *Holloway* that a trial court has a duty to inquire when there has been an objection to the concurrent representation, and a failure to perform that duty of inquiry requires automatic reversal. *Mickens*, 535 U.S. at 168. As to the second and third categories, the *Mickens* Court also reaffirmed the holding in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), that a trial court has a duty to conduct a *sua sponte* inquiry where the court, even without an objection, knows or reasonably should know that a particular conflict exists. The *Mickens* Court explained when this duty arises, stating it is limited to situations

"when 'the trial court knows or reasonably should know that a particular conflict exists,' [citation omitted]—which is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict, such as that which 'inheres in almost every instance of multiple representation.' [Citation omitted.]" *Mickens*, 535 U.S. at 168-69 (quoting *Cuyler*, 446 U.S. at 347, 348).

Mickens argued that in his case the duty to inquire arose because the court knew or should have known of the concurrent representation and that a failure to inquire should result in automatic reversal. To support this argument, Mickens cited *Wood v. Georgia*, 450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981).

In *Wood*, the United States Supreme Court remanded the case to the trial court to determine whether the conflict of interest that was suggested in the record "actually existed." *Wood*, 450 U.S. at 273-74. In justifying the remand, the *Wood* Court noted that the State had raised the potential conflict and the trial court knew of the facts that raised the question of whether a conflict existed. *Wood*, 450 U.S. at 272-73. The possibility that the attorney was actively representing conflicting interests "was sufficiently apparent . . . to impose upon the court a duty to inquire further" and to "demonstrate convincingly the duty of the court to recognize the possibility of a disqualifying conflict of interest." *Wood*, 450 U.S. at 272. Yet the trial court's failure to make an inquiry did not lead to a reversal because the Supreme Court was not able to "be sure whether counsel was influenced in his basic strategic decision by the [conflicting] interests . . . ." *Wood*, 450 U.S. at 272. Instead, the *Wood* Court remanded the case.

Mickens argued that through this remand order the *Wood* Court implicitly relieved the defendant of the burden of establishing that the conflict had an adverse effect on his attorney's performance because the order merely required the defendant to establish that a conflict " 'actually existed.' " See *Mickens*, 535 U.S. at 170 (quoting *Wood*, 450 U.S. at 273). The *Mickens* Court rejected this argument, explaining that the phrase " 'actual conflict of interest' " was "shorthand for the statement in [*Cuyler v.*] *Sullivan* that 'a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief.' [*Cuyler*,] 446 U.S., at 349-350." *Mickens*, 535 U.S. at 171. The Court further explained this " 'actual conflict of interest' " requirement means more than a mere division of loyalties; it requires a conflict that affected counsel's performance. *Mickens*, 535 U.S. at 172 n.5.

Thus, the *Mickens* Court refused to apply the automatic reversal exception when a judge violated the *Cuyler* duty to inquire *sua sponte*, concluding it "makes little policy sense" to do so because "[t]he trial court's awareness of a potential conflict renders it no more likely that counsel's performance was significantly affected" by a conflict than a situation in which "the trial judge is not aware of the conflict (and thus not obligated to inquire)." *Mickens*, 535 U.S. at 172-73. Neither could it be said that the "trial judge's failure to make the [*Cuyler*]-mandated inquiry often make[s] it harder for reviewing courts to determine conflict and effect, particularly since those courts may rely on evidence and testimony whose importance only became established at the trial." *Mickens*, 535 U.S. at 173. Rather, a reviewing court could "often" determine whether the conflict adversely affected the attorney's performance, "particularly since those [reviewing] courts may rely on evidence and testimony whose importance only becomes established at trial." *Mickens*, 535 U.S. at 173. *Mickens* thus explains the limited practical significance of the *Cuyler* obligation to inquire: If a defendant raises an ineffective assistance of counsel claim based on an alleged conflict of interest for the first time on appeal, the defendant will bear the same burden of showing an adverse effect on counsel's performance whether the *Cuyler* obligation to inquire applied and was ignored or simply did not apply. *Mickens*, 535 U.S. at 173-74.

Applying these holdings to this case, the Court of Appeals determined the *Cuyler* duty to inquire *sua sponte* arose and the district court abused its discretion in failing to make the inquiry when Cowell's statements made it apparent he had represented the victim in one of the cases at issue in the probation revocation proceeding. The Court of Appeals, applying *Mickens*, determined this failure to inquire did not result in automatic reversal. *Galaviz*, 2009 WL 5206238, at *3-4.

It is this conclusion that Galaviz argues is contrary to this court's holding in *State v. Jenkins*, 257 Kan. 1074, 898 P.2d 1121 (1995).

State v. Jenkins

In *Jenkins*, the defendant was charged with one count of sale of cocaine as a result of a sale to a confidential informant. Jenkins'

attorney had represented the confidential informant on unrelated charges that took place while the informant was supplying information to law enforcement officers, including information that led to the charges against Jenkins. At Jenkins' preliminary hearing, the informant appeared as a key witness for the prosecution. Jenkins' attorney, during voir dire questioning of the informant, established that the informant had no objection to the attorney representing Jenkins. The attorney then asked Jenkins if he was aware of the attorney's representation of the informant "at an earlier date" and if he was "willing to go forward" with his attorney continuing to represent him. Jenkins answered, "Yes." *Jenkins*, 257 Kan. at 1077.

After Jenkins was convicted by a jury, he appealed to the Court of Appeals, raising the issue of ineffective assistance of counsel for the first time. The Court of Appeals determined there was a conflict of interest and that Jenkins had not made an informed waiver of the conflict. Nevertheless, the Court of Appeals affirmed the conviction because Jenkins failed to show that the conflict of interest adversely affected his attorney's performance. *State v. Jenkins*, No, 70,958, unpublished opinion filed October 28, 1994, *rev'd* 257 Kan. 1074, 898 P.2d 1121 (1995).

On review of the Court of Appeals' decision, this court determined the record was sufficient for the court to consider the ineffective assistance of counsel issue, even though it was raised for the first time on appeal. *Jenkins*, 257 Kan. at 1079-80. This court further found that "[t]he record established that counsel was involved in an attorney-client relationship with the defendant and the key prosecution witness and was representing both during the trial of the defendant." *Jenkins*, 257 Kan. at 1080. Thus, this court agreed with the Court of Appeals that an "actual conflict" existed in the case. *Jenkins*, 257 Kan. at 1087. However, this court disagreed with the Court of Appeals' requirement that the defendant must show the conflict adversely affected his attorney's performance in order to receive a reversal of the conviction, concluding the automatic reversal exception stated in *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), applied even though no objection had been made and the attorney was not representing codefendants. *Jenkins*, 257 Kan. at 1081, 1083-87.

The *Jenkins* court stated two reasons for applying the *Holloway* automatic reversal exception rather than the *Cuyler* adverse effect exception even though there had been no objection to the attorney's joint representation of the prosecution witness and Jenkins. *Jenkins*, 257 Kan at 1086-87.

First, the *Jenkins* court contrasted the factual circumstances of *Holloway*—the simultaneous and dual representation of codefendants—from the circumstances in *Jenkins*—multiple representation of a prosecution witness and a defendant in the same case. The court reasoned that a conflict does not always arise from concurrently representing codefendants because, depending on the facts of the case, the codefendants might be united in interest. See *Cuyler*, 446 U.S. at 348 (while "a possible conflict inheres in almost every instance of multiple representation," multiple representation of codefendants in itself does not violate the Sixth Amendment). Consequently, "[a]bsent special circumstances, . . . trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Cuyler*, 446 U.S. at 346-47. Because of these considerations, the *Jenkins* court held that "[w]ithout an objection, the trial court is in no position to know that a particular conflict exists." *Jenkins*, 257 Kan. at 1087. In contrast, because the defense attorney represented the confidential informant "during the time the witness was acting as a confidential informant for the State in the drug transaction involved in this case[, i]t was readily apparent that confidential information in one case would be relevant in the other case. Thus, the court knew that an actual conflict existed." *Jenkins*, 257 Kan. at 1087.

Second, the *Jenkins* court observed that the district court was aware of the conflict. Specifically, the fact that the defense attorney asked the witness and Jenkins questions about her representation of both of them meant "[t]he court was put on notice that a conflict of interest existed and that the defendant had not waived the conflict on the record." *Jenkins*, 257 Kan. at 1087. The *Jenkins* court concluded:

"Under these circumstances, given the obligation of the trial court to protect the defendant's right to a fair trial and the information available to the court from the

defense counsel, we conclude that the rule established in *Holloway*, rather than the rule established in *Cuyler*, applies and that the trial court had an obligation to inquire further into the conflict of interest. Because the trial court failed to do so, the defendant's conviction must be reversed." *Jenkins*, 257 Kan. at 1087.

Hence, if the holding in *Jenkins* remains valid, the fact that neither Cowell nor Galaviz objected to Cowell's appointment would not prevent application of the automatic reversal exception. As a result, because Cowell's statements were sufficient to trigger the district court's *sua sponte* duty of inquiry and the court failed to make that inquiry, reversal would be automatic. Again, because the *Jenkins* court based its analysis on *Holloway* and *Cuyler*, this raises the question of whether *Jenkins* can be read in harmony with *Mickens* when applied to the facts of this case.

### Jenkins *in Light of* Mickens

Factually, *Mickens*, like this case, arose because the same attorney represented the victim and the defendant charged with a crime against that victim. The *Mickens* Court recognized this created a conflict of interest. But *Mickens* informs us that the only circumstance allowing for automatic reversal is one where the representation is concurrent and a timely objection has been made. See *Mickens v. Taylor*, 535 U.S. 162, 170-74, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002). Hence, any language in *Jenkins* that would suggest automatic reversal is justified even if an objection is not made or if the representation is successive was effectively overruled by the United State Supreme Court's decision in *Mickens*.

As a result, *Jenkins* does not support Galaviz' argument that he is entitled to automatic reversal simply because his attorney had a conflict of interest. Galaviz must establish which *Mickens* subcategory applies and that he met the burden that applies to that subcategory. To make this determination, we next examine the facts of this case regarding what we know about (a) the presence or lack of an objection and (b) the concurrent or successive nature of the representation.

(a) *Objection*

In this case, we know there was no objection to Cowell's representation. Hence, while the district court had a duty to make an inquiry and abused its discretion by failing to fulfill that duty, under *Mickens* Galaviz is not entitled to an automatic reversal of the district court's decision finding that Galaviz violated his probation and ordering Galaviz to serve the prison sentences. Rather, the facts of this case fall within either the adverse effect exception if Cowell's multiple representations were concurrent or the *Mickens* reservation if the multiple representations were successive.

(b) *Concurrent or Successive Representation*

The Court of Appeals treated the case as a successive representation situation, referring to Cowell's representation of his "former client," the victim in one of Galaviz' criminal cases. This inference can be drawn from Cowell's statement that he *was* the guardian ad litem for the victim. But this statement does not necessarily eliminate the possibility that Cowell had continuing obligations as a guardian ad litem for the victim, especially given that the victim was still a minor at the time of Galaviz' probation revocation proceeding. We do not even know the type of case in which Cowell was appointed as a guardian ad litem or whether he had withdrawn or had his appointment terminated. See *People v. Hernandez*, 231 Ill. 2d 134, 896 N.E.2d 297 (2008) (representation of victim and defendant deemed concurrent where attorney remained attorney of record for victim in different criminal prosecution made dormant by victim's bond forfeiture). Consequently, we simply cannot determine from the record before us whether the representation was concurrent or successive.

Yet, without discussion of what test applied to successive representation cases, the Court of Appeals, as this court did in *State v. Adams*, 284 Kan. 109, 125, 158 P.3d 977 (2007), applied the adverse effect exception to a situation it deemed to be one of successive representation. See, *e.g.*, *Boldridge v. State*, 289 Kan. 618, 627-28, 215 P.3d 585 (2009) (without discussion of *Mickens* subcategories, examined whether conflict was structural or could be waived and, because conflict could be waived, applied adverse ef-

fect exception to situation where defendant's attorney, while acting as pro tempore judge, had authorized an investigatory subpoena related to the charged crime); *State v. Carter*, 284 Kan. 312, 321-24, 160 P.3d 457 (2007) (noting adverse effect exception and citing *Mickens* in reference to criminal defendant's midtrial expression of dissatisfaction with defense attorney; issue decided based on appropriateness of district court's inquiry and resolution of objection); *State v. Gleason*, 277 Kan. 624, 650-52, 88 P.3d 218 (2004) (recognizing subcategories but not applying them because conflict of interest not established by defendant's attorney serving as prosecutor in a neighboring county).

We need not determine whether the adverse effect exception is the appropriate exception to be applied post-*Mickens* to successive representation situations because in this case the State does not argue any other test should be applied. Furthermore, like Mickens, in theory Galaviz benefitted from this treatment by not being required to meet the more difficult *Strickland* test that requires a showing that counsel's performance resulted in prejudice, which is determined by examining whether the deficient conduct affected the outcome of the proceeding. See *Mickens*, 535 U.S. at 173-74.

Applying the more lenient adverse effect exception, the Court of Appeals concluded the appellate record was sufficient to allow analysis under the exception and that the record did not establish a basis for relief. In considering whether a claim of ineffective assistance of counsel can be considered for the first time on appeal, we have previously stated that generally the factual aspects of a claim of ineffective assistance of counsel require that the matter be resolved through a K.S.A. 60-1507 motion or through a request to remand the issue to the district court for an evidentiary hearing under *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986); see *Jenkins*, 257 Kan. at 1079-80. We have, however, on occasion recognized that a record is sufficient to make the determination for the first time on appeal. See, *e.g., Gleason*, 277 Kan. at 650-52. The United States Supreme Court recognized this possibility in *Mickens*, 535 U.S. at 173-74. But the Supreme Court has also warned that the record in joint representation cases will ordinarily not memorialize mistakes of omission and for a court to

evaluate the existence and effect of such mistakes of omission will usually entail "unguided speculation." *Holloway*, 435 U.S. at 491. With these concepts in mind, we consider whether the record in this case is sufficient for us to determine if the conflict of interest adversely affected Cowell's representation.

In pointing to the record on appeal, Galaviz argues there is circumstantial evidence that Cowell was influenced by his divided loyalty to the victim because Galaviz, while initially requesting an evidentiary hearing on the allegations that he had violated his probation, eventually waived his right to require the State to meet its burden of proof. See *McFarland v. Yukins*, 356 F.3d 688, 706 (6th Cir. 2004) ("Causation can be proved circumstantially, through evidence that the lawyer did something detrimental or failed to do something advantageous to one client that protected another client's interests."). It could be argued that Cowell's loyalties to the victim would be furthered by the certainty of an admission that would lead to a revocation of Galaviz' probation. The Court of Appeals, however, concluded the more likely cause of the decision to waive the hearing was the amendment of the allegations to include new convictions. See *Galaviz*, 2009 WL 52016238, at *4. Certainly, if we were to apply *Strickland*'s prejudice test, we would conclude that Galaviz' admission to the violations most likely did not change the outcome of the proceeding.

But that is not our test. Here the question is whether Cowell's active conflict of interest had an adverse effect on his representation. Ultimately, it may be that the answer is that it did not and that it was the new convictions that influenced the decision to admit to the alleged probation violations. However, the record before us does not provide any information regarding the reasons the strategy was changed. Further, Galaviz had a right to insist on an evidentiary hearing even if it was likely, or even virtually certain, that he would not prevail. *Cf. Kargus v. State*, 284 Kan. 908, 924-25, 169 P.3d 307 (2007) (noting distinction between attorney's performance denying defendant a fair proceeding, where *Strickland* presumption of reliability applies, and depriving defendant of a right to a proceeding, where presumption cannot apply because proceeding did not occur). In other words, we disagree with the

Court of Appeals' conclusion that the record on appeal is adequate to allow us to assess this or the other allegations of adverse performance that Galaviz has asserted. As the United States Supreme Court stated in *Wood*, we are unable to "be sure whether counsel was influenced in his basic strategic decision by the [conflicting] interests . . . ." *Wood*, 450 U.S. at 272.

Nevertheless, Galaviz has not requested a *Van Cleave* hearing. Normally, this would mean we would not consider his claim and he would have to bring his claims in a proceeding under K.S.A. 60-1507. But he argues that he should be allowed automatic reversal because *Jenkins* had precedential authority and controlled his case. For the reasons we have discussed, we disagree. Yet, because this decision is the first time we have recognized the overruling of *Jenkins*, we conclude that in these exceptional circumstances a remand should be allowed.

We, therefore, remand to the district court with directions to appoint new counsel and either conduct the probation revocation proceeding with conflict-free counsel or conduct a hearing regarding the nature of the conflict of interest and whether that conflict requires a reversal of the probation revocation.

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed, and the case is remanded with directions.

MORITZ, J., not participating.

NICHOLAS ST. PETER, District Judge, assigned.

* * *

JOHNSON, J., concurring: I concur in the result.