NOT DESIGNATED FOR PUBLICATION

Nos. 118,678
118,679

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of A.R.B. and J.T.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed August 31, 2018. Affirmed.

*Laura E. Poschen*, of Ward Law Offices, LLC, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and LORI BOLTON FLEMING, District Judge assigned.

PER CURIAM: R.B., the natural father of A.R.B. and J.T.B., minor children, appeals from the district court's termination of his parental rights. Specifically, Father asserts that he received ineffective assistance of counsel during his termination hearing. Father has failed to cite anything in the record that demonstrates a deficient performance of counsel. Even if deficient representation is assumed to have occurred, Father has failed to prove that any possible deficiency resulted in prejudice. Thus, the district court is affirmed.

FACTUAL AND PROCEDURAL HISTORY

Police placed A.R.B. and J.T.B. into protective custody on July 22, 2016. On July 26, 2016, the State filed child in need of care (CINC) petitions for A.R.B. and J.T.B., alleging illegal substance abuse by the parents, neglect of the children, poor home conditions, and the parents' lack of employment. The same day, the district court ordered the State to remove A.R.B. and J.T.B. from the parents' home and place them into the custody of the Department for Children and Families (DCF). Approximately two weeks later, Father was arrested on charges of aggravated burglary, theft, and battery.

An adjudication hearing in the CINC cases was held on August 19, 2016. At that hearing, the children were adjudicated CINCs as to Mother. Father's portion of the hearing was continued at his request for an evidentiary hearing. At the same hearing, the district court granted Father's oral motion for a new attorney. The district court informed Father that his evidentiary hearing was scheduled for October 3, 2016.

At Father's adjudication hearing on October 3, 2016, Father remained in custody related to his pending criminal charges from August 2016. At the hearing, the State offered three witnesses, including Father. Father testified that he had no idea the hearing was scheduled for that day. Father further testified that he would be released from incarceration by October 11, 2016, after the State dismissed his pending charges. The State offered the testimony of Chris Garnica, a child protection specialist assigned to the family, and Bridget Klein, a family support worker also assigned to the children's CINC cases. At the end of the hearing, Father again asserted that he did not know the district court had scheduled the evidentiary hearing for that date. The district court adjudicated the children as CINCs as to Father.

The district court held a disposition hearing on October 14, 2016. At that time, Father remained incarcerated. The parents were given case plan tasks, and the cases progressed with little improvement by the parents.

Ultimately, the State filed a motion for finding of unfitness and termination of parental rights against both Mother and Father. The motion noted numerous incidents of negligent parenting, refusal by both parents to work with the State to reintegrate the children with the parents, open hostility by Father to the process, and continued drug and alcohol usage. On February 3, 2017, the district court, at Father's request, continued a hearing on the termination of parental rights.

On June 27, 2017, the district court held the termination hearing. Father was transported from prison to participate. Prior to giving testimony, Father told the district court he did not receive notice of the hearing and was unprepared for testimony, despite having been granted the previous continuance and new court date set at his request. The record reflects that Father was agitated, disrespectful, and uncooperative throughout the proceeding. During the hearing, Father told the court he did not have the opportunity to call witnesses on his behalf and he felt he was not receiving a fair hearing. While on the witness stand, Father refused to cooperate with the process. During testimony of another witness, Father became agitated and said, "You can take me back. I don't give a damn about no contempt of court. You can find me in contempt of Court, but I'm not fixing to sit here and go through this bullshit again." As the result of his actions during the termination hearing, Father was found in contempt, sentenced to six months in jail, and removed from the hearing. Father's attorney stated to the district court that the hearing could proceed without his client and did not request a continuance.

At the conclusion of the termination hearing, pursuant to K.S.A. 2017 Supp. 38-2269(a), the district court found by clear and convincing evidence that Father was unfit by reason or conduct or condition which rendered him unable to care properly for the

3

children and that the conduct or condition was unlikely to change in the foreseeable future. The district court also found that termination was in the best interests of the children.

The district court then stated that it had reviewed the nine factors in K.S.A. 2017 Supp. 38-2269(b) and determined the following factors applied to support its unfitness finding:

- K.S.A. 2017 Supp. 38-2269(b)(3): The district court noted that the cases had initially been filed because of the parents' drug use, and Father had tested positive for PCP three months earlier.

- K.S.A. 2017 Supp. 38-2269(b)(4): The district court focused on Father's failure to provide a safe and stable living environment, his failure to protect the children from his own issues and Mother's issues, and his own instability and poor judgment, resulting in physical, mental, or emotional abuse or neglect of the children. The district court pointed out that throughout the duration of the children's cases, Father had been free of incarceration for a total of only 17 days and stressed that this illustrated Father's inability to provide a safe and stable living environment and his inability to protect the children.

- K.S.A. 2017 Supp. 38-2269(b)(5): Father had been convicted of felonies in at least two different cases during the children's cases and was currently serving a prison sentence of approximately 15 years. The district court noted that the earliest Father could be released would be in approximately 10 years.

- K.S.A. 2017 Supp. 38-2269(b)(7): The district court noted that DCF and St. Francis had been available and had offered referrals, plan tasks, and drug screens to help Father become stable and place him in a position to care for his

4

children. However, Father's behavior was hostile and uncooperative, and Father did not complete court orders, did not complete his case plans, did not complete a majority of his drug screens, and refused to take responsibility for his children being taken from him.

- K.S.A. 2017 Supp. 38-2269(b)(8): Father had failed due to lack of effort to adjust his circumstances, conduct, or conditions to meet the needs of the children. The district court felt this was demonstrated by Father's incarceration and failure to participate in any of the assistance offered to him by the court, DCF, and St. Francis.

Because the children were in out-of-home placement, the district court also considered the factors in K.S.A. 2017 Supp. 38-2269(c) and found the following factors supported its unfitness finding:

- K.S.A. 2017 Supp. 38-2269(c)(2): Father had failed to maintain regular visitations with the children or communicate with the children or with the children's custodian due to his incarceration and his uncooperativeness.

- K.S.A. 2017 Supp. 38-2269(c)(3): Father had failed to carry out a reasonable plan approved by the district court directed toward the reintegration of the children. The district court noted that Father had not completed any court-approved plan during the pendency of these cases.

The district court then terminated Father's parental rights. Mother relinquished her rights to the children during the same hearing. She has not appealed.

On June 28, 2017, Father timely filed this appeal. On November 10, 2017, Father filed an amended notice of appeal, as the prior appeal failed to include the verification form. The district court allowed the out-of-time filing on December 5, 2017.

WAS FATHER'S COUNSEL INEFFECTIVE?

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. See *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). When reviewing a mixed question of fact and law, an appellate court applies a bifurcated review standard. The district court's factual findings are generally reviewed for substantial competent evidence, and its conclusions of law based on those facts are subject to unlimited review. See *State v. Miller*, 293 Kan. 535, 547, 264 P.3d 461 (2011).

Father asserts, for the first time on appeal, that he received ineffective assistance of counsel during his termination of parental rights proceedings. As a preliminary matter, an appellate court generally will not consider an allegation of ineffective assistance of counsel raised for the first time on appeal. *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014). "[G]enerally the factual aspects of a claim of ineffective assistance of counsel require that the matter be resolved through a K.S.A. 60-1507 motion or through a request to remand the issue to the district court for an evidentiary hearing under *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986)." *State v. Galaviz*, 296 Kan. 168, 192, 291 P.3d 62 (2012). An appellate court may consider a claim of ineffective assistance of counsel for the first time on appeal only when "there are no factual issues and the two-prong ineffective assistance of counsel test can be applied as a matter of law based upon the appellate record." *Wimbley v. State*, 292 Kan. 796, 807, 275 P.3d 35 (2011).

In this case, Father filed a motion with this court to remand this case to the district court for a *Van Cleave* hearing. However, on February 15, 2018, this court denied

Father's motion without further discussion. This court need not examine whether a *Van Cleave* hearing in the context of a termination of parental rights hearing is required because on these facts, even if ineffective representation occurred, there was no prejudice.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish "(1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury, and the reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, "'the defendant must show a reasonable probability that but for counsel's [deficient performance], the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations omitted.]" *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Under the first factor of the *Sola-Morales* test, Father raises three alleged deficiencies with his trial counsel's performance. First, Father asserts that his counsel provided deficient communication. Specifically, he argues his counsel only briefly spoke with him before his evidentiary hearings and that his trial counsel ignored Father's attempts at additional communication. Father further argued that he had no knowledge of the hearings prior to their occurrence, so he was unable to present a prepared defense.

At the October 3, 2016 hearing on the State's motion for review and termination of parental rights, Father told the district court he had no idea that he had a hearing that day.

7

However, the record indicates that on August 19, 2016, the district court told Father that his evidentiary hearing was scheduled for October 3, 2016. Furthermore, besides his outbursts during the June 27, 2017 hearing, Father cites to nothing indicating a communication breakdown between his attorney and himself. In fact, during that hearing, Father refused to properly answer questions while he was on the stand. Due to his inability to control himself, the district court found Father in contempt of court and sentenced him to another six months of jail time. Furthermore, Father's attorney told the district court that Father refused to talk with him. Therefore, Father has failed to prove a deficiency on his deficient communication claim.

Father next claims that his attorney failed to subpoena witnesses that Father requested or present evidence on his behalf. "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

Here again Father fails to present anything more than the bare assertion that his attorney was deficient. Father asserted at the June 27 hearing that he asked his lawyer to call his children's pediatrician and two other people. On appeal, Father simply asserts that there were witnesses his attorney could have called, without articulating who those witnesses were specifically or what they would have to say in testimony. Father carries the burden to show that his counsel's actions, when viewed in the totality of the circumstances, were beyond the broad discretion given to attorneys. His bare argument and assertion in the record that he told his attorney about some witnesses is insufficient to overcome the strong assumption that his attorney's conduct was appropriate. See *Kelly*, 298 Kan. at 970-71.

8

Father finally argues that his attorney made inappropriate statements to the district court. Specifically, Father takes issue with his attorney telling the district that the June 27 hearing should proceed in his absence after the district court found him in contempt and he left the courthouse. Father seeks the application of the exception under *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), which provides that a defendant who is completely denied the assistance of counsel at a critical stage of a proceeding does not need to prove that his attorney's deficient conduct had a probable effect on the outcome of the case. See *Fuller*, 303 Kan. 486-87.

Here, the *Cronic* exception is inapplicable. Father had an attorney prior to and during the June 27 hearing. Father chose to act in contempt of court and specifically told the court, "You can take me back. I don't give a damn about no contempt of court. You can find me in contempt of Court, but I'm not fixing to sit here and go through this bullshit again." Father refused the counsel of his attorney, rather than the district court or some other party denying him representation. Therefore, the *Cronic* exception is inapplicable to his actions.

Perhaps the better practice would have been for Father's counsel to at least request a continuance, even though Father created the reason for his own absence. However, even assuming the representation was deficient due to counsel's failure to request a continuance, Father suffered no prejudice due to the overwhelming evidence in the record of his unfitness. This is true for each of Father's claims of ineffective assistance. Father would have to establish that there is a reasonable probability a different result would have been achieved in the absence of the deficient performance. See *Sola-Morales*, 300 Kan. at 882. Father simply cannot meet this burden under the facts of this case. The record demonstrates that Father tested positive for drugs throughout the life of these cases. Father would become combative and aggressive when asked to perform urinalysis testing. Father was unemployed and could not provide even basic necessities for the children. Father was incarcerated for all but 17 days while these cases were pending. Father

9

showed no improvement throughout the life of the cases and was unwilling to change his circumstances to meet the needs of his children. Most compelling, at the time of the termination hearing, Father was serving a 189-month prison sentence.

Additionally, Father has failed to *articulate* any actual prejudice that he suffered as a result of his attorney's actions. His appeal only offers generic statements that he was prejudiced but does not explain how his attorney's actions had a probable effect on the outcome of the case. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Sprague*, 303 Kan. at 425.

In sum, even if deficient representation is assumed to have occurred, Father has shown no reasonable probability a different result would have been achieved in the absence of the deficient performance.

Affirmed.