IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,513

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW R. MCDANIEL,
*Appellant.*

SYLLABUS BY THE COURT

1.

A criminal defendant's right to be present at every critical stage of the proceedings is guaranteed by both the United States Constitution and Kansas statute.

2.

The right to be present at any critical stage of the proceedings encompasses any stage of the trial when the jury is in the courtroom or when the defendant's presence is essential to a fair and just determination of a substantial issue.

3.

By articulating dissatisfaction with court-appointed counsel, a criminal defendant triggers a district court's duty to inquire about that dissatisfaction. A district court abuses its discretion if it becomes aware of such dissatisfaction but fails to conduct an inquiry.

1

4.

A party must do more than simply fail to object to a district court's proposed jury instruction to risk application of the invited error doctrine as a bar to appellate review of that instruction.

5.

A jury instruction must always fairly and accurately state the applicable law. An instruction that does not do so is legally infirm.

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, TERRY L. PULLMAN, and WILLIAM S. WOOLLEY, judges. Opinion filed June 9, 2017. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: This is Matthew McDaniel's direct appeal of his felony-murder and aggravated robbery convictions. The focus is on the district court's handling of McDaniel's multiple pretrial requests for substitute counsel, one of which was ultimately granted. We agree the district court erred when it refused McDaniel's initial request for a new attorney without any inquiry. We also agree it was an error for the presiding judge to make on-the-record observations about McDaniel's interactions with his attorney at a time when McDaniel was not present. We discuss these missteps and the caselaw concerning them, although we hold these errors were harmless. Accordingly, we affirm.

2

Ronald Wilson died from two gunshot wounds to the head. Wichita police investigated the death and questioned McDaniel. After initially denying involvement, McDaniel eventually confessed that he, Kendall Gentry, and Christopher Brown had planned to rob Wilson two days before the crime. He speculated the robbery's purpose was to assist in covering a drug debt Brown owed because one of Wilson's relatives stole drugs from Brown.

McDaniel said the group went to Wilson's apartment and played video games until Brown signaled and Gentry shot Wilson. McDaniel admitted going through Wilson's pockets and finding a wad of cash and a cell phone. Gentry later counted about $1,000 in cash. When McDaniel was arrested the morning after the crimes, he was carrying about $350 in cash.

The State charged McDaniel with felony murder and aggravated robbery. At trial, McDaniel's confession to police was the State's primary evidence. McDaniel testified and denied the robbery was planned and said he lied in his earlier police statements because Brown and Gentry told him to and he was afraid of them. McDaniel called Gentry as a defense witness, but Gentry testified it was McDaniel who told him about a plan to rob Wilson and identified McDaniel as the shooter. Gentry admitted being present when the killing occurred but denied participating in it. The jury convicted McDaniel, and he was sentenced to consecutive terms of a hard 20 life imprisonment for the felony murder and 102 months' imprisonment for the aggravated robbery.

McDaniel timely appeals, raising three challenges to his convictions. First, he argues the district court deprived him of his right to be present at a critical stage of the trial when, after McDaniel's preliminary hearing, the court made on-the-record

observations about his interactions with his preliminary hearing counsel. Second, he claims the court failed to inquire into that attorney's potential conflict of interest. Third, McDaniel contends the felony-murder jury instruction prevented the jury from considering whether McDaniel should have been acquitted because the killing was completed before the underlying felony commenced.

Jurisdiction is proper. See K.S.A. 2016 Supp. 22-3601(b)(3)-(4) (Supreme Court's jurisdiction over a criminal case in which life sentence has been imposed and defendant has been convicted of an off-grid felony).

RIGHT TO BE PRESENT AND FAILURE TO INQUIRE INTO POTENTIAL CONFLICT

Much of McDaniel's appeal focuses on his efforts to discharge his first appointed attorney, Pamela Parker, who represented him at his preliminary hearing and for the following three months. The district court then appointed new counsel. We discuss those efforts and the district court's handling of McDaniel's requests first.

*Additional Facts*

Prior to his preliminary hearing, McDaniel filed a pro se motion to dismiss the case. In that motion, he made generalized complaints that his prosecution and detention violated his rights under the federal and state constitutions. In early August 2012, Judge Benjamin L. Burgess presided at McDaniel's preliminary hearing. When Parker entered her appearance, she said McDaniel had just told her he wanted to move pro se for replacement counsel and he objected to any further proceedings. She also informed the court about McDaniel's pro se motion to dismiss the charges against him, "which I told him I will not argue. So I don't know if the court wants to take up those matters before we begin but I thought I would put the court on notice."

4

Judge Burgess asked if a written motion had been filed. Parker explained again that McDaniel had filed a pro se motion to dismiss, which was not yet set for hearing. She repeated that she had informed McDaniel she would not argue his pro se motion to dismiss but had said McDaniel could. Judge Burgess responded,

"Well, if at this juncture Mr. McDaniel has appointed counsel, there is no motion, and I have the matter on my screen right now, there is no filed motion that I've seen with regard to the other at issue—

"MS. PARKER:  Oh, no, he just informed me about the motion to dismiss right now.

"THE COURT:  And Mr. McDaniel is not allowed to act as co-counsel. Ms. Parker is a qualified, experienced attorney, so we will proceed."

McDaniel started to speak, but the judge cut him off, saying:  "Mr. McDaniel, I don't need to hear from you. You have counsel, counsel speaks on your behalf. I don't allow defendants to act as co-counsel. It's that simple."

The hearing resumed. When Parker's turn came again to enter her appearance, she stated:

"Your honor, again, Mr. McDaniel would like to make an oral motion to have me removed from the case. I've explained that the Court has ordered him to file a written motion. He has a list of reasons he would like to address with the Court."

Judge Burgess asked the State to respond. The prosecutor conceded it probably would be more expedient to take up the oral motion for new counsel "because I don't

want to have to do the hearing a second time, so that's fine." The following exchange then occurred:

> "THE COURT:  Well, this is a preliminary hearing. It's not the trial. I don't know that there's any need to delay the case. I'm well familiar with Ms. Parker. I know that she's a very capable lawyer. And I see no reason to delay the proceedings for the purpose of preliminary hearing at this point.
>
> "So, Mr. McDaniel, if you wish to file a written motion—
>
> "MR. MCDANIEL:  Sir—
>
> "THE COURT:  —to—to have Ms. Parker removed from the case for ineffective assistance of counsel, for whatever reason you might have any legal basis for, you can do that but not today. It's too late.
>
> "MR. MCDANIEL:  I understand. Can I please explain a little of what I have here?
>
> "THE COURT:  Mr. McDaniel, the answer to that is no. I'm not going to allow that."

The proceedings resumed, the State presented its evidence, and Judge Burgess ordered McDaniel bound over for trial. At that point, the judge directed that the record be closed and the court went into recess. The hearing transcript reflects McDaniel was no longer present, but then Judge Burgess said, "I want to reopen the record as it pertains to Mr. McDaniel just for a moment." The judge commented,

> "I just wanted to have the record reflect that during the course of the preliminary hearing I noted during the examination of [the witness] that there were conversations occurring between Mr. McDaniel and Ms. Parker. They were communicating, one to the other and

6

back again. At one point I noted Mr. McDaniel had a smile on his face. And obviously I'm not aware of what the conversations were, but I think it becomes clear to me, at least, at this point that there is not a complete breakdown of communication."

The judge invited Parker to respond and she said,

"Your Honor, I guess I would just clarify, when I began my questioning with [the witness], I informed him that I had problems hearing him and it was through no fault of his own. It was, in fact, because, as the Court pointed out, my client was continuing to talk to me, although I had provided him a pen to write notes on. So it—that's the only clarification I would make as to—there is communication going on."

Judge Burgess resumed,

"Certainly I don't intend nor ever want to invade the privilege with regard to what conversation would occur, but I think it was fair to note there were conversations. Mr. McDaniel was speaking to you, you were speaking back to him, and it was a two-way conversation. So again, the only thought that occurs to me is just make a note of the fact there does not appear to be a complete break down [*sic*] of communication."

Three weeks later, McDaniel filed a written pro se "Motion for Reappointment of Counsel." That motion is not included in the record. In mid-September, Judge Terry L. Pullman presided at a hearing on that motion. Judge Pullman summarized McDaniel's allegations as: a lack of contact with Parker; Parker not allowing him to discuss or prepare the defense, to view evidence, or to subpoena witnesses or evidence; the lack of a working relationship with Parker; and that Parker had refused to raise his "legal actions" with the court.

After McDaniel presented his complaints, Judge Pullman denied the motion but continued the trial date to give McDaniel additional time to work with Parker on trial

preparation. Judge Pullman advised that McDaniel was free to refile the motion if he believed the situation did not improve. Seven weeks later, McDaniel acted on that suggestion and filed another pro se motion for substitute counsel. That motion was granted and a new attorney was appointed. We turn now to McDaniel's arguments on appeal.

*Right to Be Present at Critical Stages of the Proceeding Is Violated*

We first address McDaniel's claim that the district court deprived him of his right to be present at critical stages of the proceeding at the preliminary hearing when it made the record afterwards and outside of his presence. We agree there was an error but conclude it was harmless. In doing so, we necessarily reject McDaniel's claim the error was structural and requires reversal.

*Standard of Review*

Whether a defendant's right to be present at a critical stage of the proceedings has been violated is a question of law subject to de novo review. *State v. Davis*, 284 Kan. 728, 730-31, 163 P.3d 1224 (2007). Similarly, whether an error is structural or whether it may instead be declared harmless is a question of law. *State v. Hill*, 271 Kan. 929, 934, 26 P.3d 1267 (2001), *abrogated on other grounds State v. Voyles*, 284 Kan. 239, 160 P.3d 794 (2007).

*Discussion*

A criminal defendant's right to be present at every critical stage of the proceedings is guaranteed by both the United States Constitution and Kansas statute. *State v. Bolze-Sann*, 302 Kan. 198, 215, 352 P.3d 511 (2015). The constitutional right "emanates from

the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments." *Davis*, 284 Kan. at 731. K.S.A. 2016 Supp. 22-3405(a) codifies the right and "'is analytically and functionally identical to the requirements under the Confrontation Clause and the Due Process Clause of the federal Constitution that a criminal defendant be present at any critical stage of the proceedings.'" *State v. Killings*, 301 Kan. 214, 241, 340 P.3d 1186 (2015) (quoting *State v. Engelhardt*, 280 Kan. 113, Syl. ¶ 2, 119 P.3d 1148 [2005]).

A critical stage of the proceedings for the purposes of the right to be present encompasses "'any stage of the trial when the jury is in the courtroom or when the defendant's presence is essential to a fair and just determination of a substantial issue.'" *Killings*, 301 Kan. at 241 (quoting *Engelhardt*, 280 Kan. 113, Syl. ¶ 2). In the latter scenario, "'[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *United tates v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985); see also *Davis*, 284 Kan. at 731-32 (defendant's right to be present when the district court has a conversation with a juror).

But that right is not unqualified, and it does not exist when the defendant's "'presence would be useless, or the benefit but a shadow.'" *Grayton v. Ercole*, 691 F.3d 165, 170 (2d Cir. 2012) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106-07, 54 S. Ct. 330, 78 L. Ed. 674 [1934]). In addition, K.S.A. 2016 Supp. 22-3208(7) provides defendants the "right to be present at a hearing on any motion," though this right might be greater in scope than the constitutional right to be present. *State v. Brownlee*, 302 Kan. 491, 507-08, 354 P.3d 525 (2015) (declining to address whether every motion hearing is critical stage of trial due to State's concession that defendant had right to attend hearing from which he was absent).

9

This court has observed that the scope of the right to be present is

"influenced by circumstances and context, *i.e.*, a defendant does not have a right to be present at proceedings before the court involving matters of law . . . , at remand proceedings, . . . and when excuses from jury service and deferrals were determined prior to when jurors were assigned to a particular case. [Citations omitted.]" *State v. Minski*, 252 Kan. 806, 815, 850 P.2d 809 (1993).

As we have summarized the right, it extends to "any stage of the criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure." *State v. Calderon*, 270 Kan. 241, 245, 13 P.3d 871 (2000).

"In determining whether the right extends to a particular proceeding apart from the trial itself, the Supreme Court has looked to the function presence would serve in the proceeding at issue. In particular, the Court has examined whether or not exclusion of the defendant interfered with the defendant's opportunity to test the evidence introduced against him, and whether or not it otherwise affected his opportunity to defend himself at trial." 6 LaFave, Israel, King & Kerr, Criminal Procedure § 24.2(a) (4th ed. 2015).

McDaniel should have been present when Judge Burgess reopened the preliminary hearing record to memorialize his observations regarding interactions between McDaniel and Parker. The issue addressed at the proceeding bore on his opportunity to defend himself at trial, and his participation was necessary to fairly resolve it.

The State argues this was not a critical stage of the proceedings, noting Judge Burgess had already bound McDaniel over for trial. That, of course, was the principal business to be addressed at the preliminary hearing. In the State's view, the post-hearing proceedings were "simply [to make] a brief record of [Judge Burgess'] observations." We cannot accept this characterization.

10

Judge Burgess said his purpose in reopening the case record was to "make a note of the fact there does not appear to be a complete break down [*sic*] of communication." There could only be one reason for doing so—to preserve the observation for others who might later review whether McDaniel deserved a new attorney at the just completed preliminary hearing. Indeed, this was prescient because the State relied on Judge Burgess' observations during Judge Pullman's subsequent hearing on McDaniel's first written pro se motion for new counsel, telling Judge Pullman that:

"Judge Burgess also made a record of the fact that he observed the defendant throughout the hearing conversing with Ms. Parker. Ms. Parker conversing back with him, *and that from Judge Burgess's observations, the two seemed to be working well together throughout that hearing together*." (Emphasis added.)

McDaniel responded to Judge Pullman that there was no interaction and that he was only instructing Parker what to write down and when "the dude was telling lies." But it was too late; McDaniel was shadowboxing with Judge Burgess about events that had happened outside of McDaniel's presence—events that the State at least viewed as relevant to Judge Pullman's determinations about who would be, or continue to be, McDaniel's lawyer. Functionally, Judge Burgess was a witness at the hearing in front of Judge Pullman. But because McDaniel was not present when Judge Burgess made the record, he had no opportunity to confront Judge Burgess about his view of the facts.

The post-hearing discussion also could be viewed simply as an extension of the preliminary hearing, which most certainly was a critical stage of the proceedings. See *State v. Jones*, 290 Kan. 373, 380, 228 P.3d 394 (2010) (holding preliminary hearing was a critical stage of the prosecution at which defendant had right to represent himself because at the hearing probable cause to proceed with trial was determined and testimony

11

to which both parties referred at trial was taken); see also K.S.A. 2016 Supp. 22-2902(3) (requiring defendant's presence at preliminary examination). Either way, we hold that the on-the-record remarks by Judge Burgess and counsel constituted a critical stage of the proceedings.

McDaniel's constitutional and statutory rights were violated when he was excluded. Accordingly, we consider next whether this requires reversal.

When violations of both statutory and federal constitutional rights arise from the same acts or omissions, the appellate court must apply the more rigorous of the two harmless error standards—the federal constitutional harmless error standard defined in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *State v. King*, 297 Kan. 955, 968, 305 P.3d 641 (2013); see, *e.g.*, *State v. Kleypas*, 305 Kan. 224, 256-58, 382 P.3d 373 (2016) (applying the *Chapman* test to defective warrant issue arising under Fourth Amendment); *State v. Verser*, 299 Kan. 776, 789, 326 P.3d 1046 (2014) (applying *Chapman* standard to violation of right to be present). Under the *Chapman* standard, an error may be declared harmless only when

> "'the party benefitting from the error proves beyond a reasonable doubt that the error . . . will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *Verser*, 299 Kan. at 789 (quoting *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011], *cert. denied* 565 U.S. 1221 [2012]).

This court has recognized in the context of a district courts' ex parte communications with jurors that a violation of the right to be present may be harmless. See, *e.g.*, *Bolze-Sann*, 302 Kan. at 216-17; *Verser*, 299 Kan. at 789-90; *State v. Bowen*, 299 Kan. 339, 357-58, 323 P.3d 853 (2014) (rejecting argument that communication with jury outside defendant's presence is structural error). And the United States Supreme

Court has acknowledged more generally that a violation of the right to be present during a critical stage of the proceedings can be harmless. *Rushen v. Spain*, 464 U.S. 114, 117-19, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) (reversing the Court of Appeals for the Ninth Circuit's ruling that "an unrecorded *ex parte* communication between trial judge and juror can never be harmless error").

McDaniel argues the error was structural and therefore cannot be deemed harmless. He relies on *State v. Calderon*, 270 Kan. 241, 13 P.3d 871 (2000). In *Calderon*, the court declined to apply harmless error analysis when a trial court deprived a non-English-speaking defendant of the right to be present during closing arguments at trial by failing to provide an interpreter. 270 Kan. at 253-54. In declining to apply harmless error analysis, the court noted "the defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression on the trier of fact," and reasoned that the failure to provide defendant a meaningful presence during closing arguments "implicates the basic consideration of fairness." 270 Kan. at 253.

The court distinguished *Calderon* in *State v. Mann*, 274 Kan. 670, 682-83, 56 P.3d 212 (2002), holding harmless-error analysis applied when it dealt with the infringement of the right to be present, *i.e.*, the judge's ex parte communication with four jurors. The *Mann* court held this "did not implicate a basic consideration of fairness or undermine the function of a criminal trial." 274 Kan. at 683; see also *State v. Lopez*, 271 Kan. 119, 134, 22 P.3d 1040 (2001) (declining to declare structural error to defendant's absence when prospective juror questioned in chambers because absence did not "implicate the basic consideration of fairness or undermine the function of a criminal trial").

"Errors are structural when they 'defy analysis by "harmless-error standards"' because they 'affect[ ] the framework within which the trial proceeds.'" *Jones*, 290 Kan. at 382 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed.

13

2d 302 [1991]). The difference between *Calderon* and *Mann* was that the error in *Calderon* both went to "a fundamental assumption of the adversary system that the trier of fact observes the accused throughout the trial" and had an effect on the trial's outcome that was "'necessarily unquantifiable and indeterminate,'" making it unamenable to harmless-error's outcome-based analysis. See *Calderon*, 270 Kan. at 253 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282, 113 S. Ct. 2078, 124 L. Ed. 2d 182 [1993]). The error in this case, *i.e.*, McDaniel's absence during the brief discussion after his preliminary hearing, does not fit that mold.

Applying the *Chapman* standard, we hold the error was harmless beyond a reasonable doubt. A similar situation was addressed in *Campbell v. Rice*, 408 F.3d 1166, 1172-73 (9th Cir.), *cert. denied* 546 U.S. 1036 (2005), in which a defendant's exclusion from an in-chambers meeting about defense counsel's potential conflict of interest was held to be harmless. The *Campbell* court noted the defendant failed to demonstrate he was adversely affected by any alleged conflict and did not claim any other adverse effects other than meritless ineffective assistance claims. 408 F.3d at 1170-71. Similarly, McDaniel concedes in his brief that "it is difficult to assess whether these actions altered the outcome of the trial." And at oral argument, McDaniel's counsel was again unable to articulate how this misstep by Judge Burgess could have affected the trial's outcome.

There is nothing in the record we can find to suggest this error could have affected the trial's outcome. The conversation dealt solely with McDaniel's interaction with Parker during the preliminary hearing, and she was later removed from the case well before trial. The appearance docket suggests her removal occurred before pretrial motion practice began—including a hearing during which the district court determined the admissibility of McDaniel's statements to investigators, the key prosecution evidence at trial. McDaniel's absence from the post-hearing discussion was harmless beyond a reasonable doubt.

14

*Right to Conflict-Free Counsel is Not Violated*

McDaniel argues he is entitled to a new preliminary hearing and trial because he "was repeatedly denied conflict-free counsel at his preliminary hearing" and because the district court "ignored the obvious conflict of interest of Parker in her representation of him." These arguments are not entirely clear, but it appears McDaniel believes an actual conflict arose at the preliminary hearing when Parker said she would not argue McDaniel's motion to dismiss and that the subsequent hearing on McDaniel's first motion to discharge Parker confirmed a conflict of interest. We will approach the case on that basis.

*Standard of Review*

McDaniel had a right to effective assistance of counsel during all critical stages of his criminal proceedings under the Sixth Amendment to the United States Constitution. And this carries "a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties." *State v. Pfannenstiel*, 302 Kan. 747, 758, 357 P.3d 877 (2015). The district court is charged with ensuring this right is honored, so when there is an articulated statement of attorney dissatisfaction, it is the district court's responsibility to inquire. See 302 Kan. at 760. "This duty of inquiry exists regardless of the remedy sought as a result of the alleged conflict of interest, whether it be a new trial or new counsel." 302 Kan. at 760.

Whether the district court adequately discharges this duty is reviewed for an abuse of discretion. See 302 Kan. at 760-61. That standard is well known.

15

"Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law, *i.e.*, the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. . . . The defendant bears the burden of showing the court abused its discretion." *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013).

The duty of inquiry may lead a district court to abuse its discretion in three ways: (1) When the district court becomes aware of a potential conflict of interest but fails to inquire at all, which is a decision based on an error of law—the error being the district court's failure to fulfill a legal duty; (2) when the court is aware of the conflict, proceeds to investigate, but fails to conduct an appropriate inquiry; and (3) when the court, after being aware of the conflict, conducts an appropriate inquiry into the defendant's expression of dissatisfaction with counsel but commits an abuse of discretion in deciding whether to substitute counsel. 302 Kan. at 760-62.

*Discussion*

In this case, the district court abused its discretion by failing to inquire at the preliminary hearing. This is best illustrated by the exchange when McDaniel asked, "Can I please explain a little of what I have here?" Judge Burgess responded:  "[T]he answer to that is no." Judge Burgess cut off any dialogue after being told McDaniel wanted to move for new counsel and objected to any further proceedings. This determination of error requires us to consider what, if any, remedy is required.

Our first step—identifying the conditions that must be present for the defendant to obtain relief—depends on the type of ineffective assistance claim alleged. See *State v. Sharkey*, 299 Kan. 87, 100, 322 P.3d 325 (2014) (discussing categories of ineffective

assistance of counsel claims and the appropriate tests enumerated in *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 [2002]). There are three possible categories of claims.

The first is deficient attorney performance. In these cases, a defendant is entitled to relief upon satisfying the two-part test from *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, the defendant must demonstrate the attorney's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Next, the defendant must demonstrate the attorney's deficient performance prejudiced the defense, which necessitates showing counsel's error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687. In other words, the defendant must show there is a reasonable probability the result would have been different but for counsel's errors. 466 U.S. at 694. The *Strickland* test is the "'general rule'" governing ineffective assistance claims. *State v. Galaviz*, 296 Kan. 168, 181, 291 P. 3d 62 (2012).

The second is "an 'exception to the general rule,' known as the *Cronic* exception." 296 Kan. at 181. In this category of claims, the defendant suffers a "complete denial of the assistance of counsel or the denial of counsel at a critical stage of a proceeding." 296 Kan. at 181 (citing *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 [1984]). These situations present "''circumstances of [such] magnitude''" that "'the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary.'" 296 Kan. at 181. Therefore, when this occurs "a defendant is 'spared . . . the need of showing probable effect upon the outcome.'" 296 Kan. at 181.

The third category involves circumstances when the defendant's attorney actively represented conflicting interests. 296 Kan. at 181. This category "is more nuanced," and

17

claims falling within it "'may'" present """circumstances of [such] magnitude""" that the "'likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary.'" 296 Kan. at 181-82 (quoting *Mickens*, 535 U.S. at 166). And this final category is further divided into three subgroups, which the *Galaviz* court referred to as: (1) the automatic reversal exception, (2) the adverse effect exception, and (3) the *Mickens* reservation. In all these subgroups, defendants must establish that their attorney had an active conflict of interest. As to the first two subgroups, the alleged conflicts are related to the attorney's engagement in multiple, concurrent representations. 296 Kan. at 182. Put in another way, "the attorney is simultaneously representing codefendants with antagonistic interests in the same proceeding." *Stovall*, 298 Kan. at 376. The third subgroup, the "*Mickens* reservation, arises in situations where a conflict is 'rooted in counsel's obligations to *former* clients' or 'counsel's personal or financial interests.'" *Galaviz,* 296 Kan. at 184.

McDaniel argues his case fits the second, *Cronic* category, so he claims he has no burden to show any adverse impact on the outcome to his case. For this he relies on *Sharkey*, 299 Kan. 87, and *State v. Prado*, 299 Kan. 1251, 329 P.3d 473 (2014), because he claims at the preliminary hearing Parker took "no effort to put forth his claims," failed "to object to the court holding a hearing" outside his presence, and "spoke out against her client."

But McDaniel's case is distinguishable from *Sharkey* and *Prado*. In those cases, the conflicts bore directly on counsels' abilities to represent the defendants' interests at the critical stages of those cases that were in controversy. In *Sharkey*, defense counsel represented the defendant at a hearing on pro se posttrial motions that asserted the attorney was ineffective due to his attorney's conflict of interest, leaving defendant with "effectively . . . no legal representation at the motions hearing." *Sharkey*, 299 Kan. at 101.

18

The court remanded the case for a new hearing on the posttrial motions with conflict-free counsel. 299 Kan. at 101.

And in *Prado*, in which the court did not apply the *Cronic* exception, defense counsel represented defendant at a motion to withdraw a plea founded on the defendant's allegation that the attorney ineffectively advised him. See *Prado*, 299 Kan. at 1260. A majority of the court concluded reversal was required without a further showing of prejudice because the record demonstrated the actual conflict adversely affected counsel's performance. 299 Kan. at 1260-61.

In McDaniel's case, the record does not establish that McDaniel's briefly-expressed desire for new counsel caused any conflict that bore directly on Parker's ability to represent him during the preliminary hearing. At the subsequent hearing on his motion for new counsel, Judge Pullman asked what discovery McDaniel believed Parker had refused to give him, and McDaniel clarified that he had received discovery after he filed the motion to remove Parker—though not everything he was looking for. McDaniel then explained he had several witnesses who could corroborate his version of events and were not called at the preliminary hearing, although he could not recite their names. Judge Pullman described a preliminary hearing's purpose and why that "is not a great time to produce defense witnesses," to which McDaniel acknowledged, "Right. Well, that sounds good. That's understandable."

Judge Pullman's inquiry also delved into McDaniel's claim that Parker had refused to file "legal actions" focused on his motion to dismiss. McDaniel described the basis for his motion as being "[m]y arraignment rights" and appears to have been curious why the motion had not been taken up by the court. Parker explained, "What he meant was his first appearance. That's what—we've discussed this issue and I've explained to him why I

will not file the motion, but that's his issue." Parker later elaborated she was "not going to file [the motion] because there was no merit to it"

> and that she had "done research. I've talked to the other attorneys in my office. I don't believe there's any merit or good faith basis to file that motion, and I've explained to him that I cannot file motions that are meritless. And I will not do so. So that's the disagreement on that."

It is clear from this that Parker did not face a dilemma between advocating for McDaniel against her own professional interests and advocating for herself against McDaniel's interests at the preliminary hearing. The *Cronic* exception is not applicable, so this case falls within *Mickens*' third category—cases in which it is alleged defendant's counsel actively represented conflicting interests. And because this case does not involve Parker's concurrent representation of codefendants, it is within the third subgroup, the *Mickens* reservation.

Relief for a trial court's failure to inquire into a potential conflict in *Mickens* reservation cases hinges on an unsettled standard. See *Galaviz*, 296 Kan. at 184. But one of two standards would apply. The first is the *Strickland* standard, under which relief would not be granted unless the defendant could demonstrate both that the attorney's performance was deficient and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Galaviz*, 296 Kan. at 181, 184 (citing *Mickens*, 535 U.S. at 166, 176).

The alternative is the *Cuyler* standard used in the adverse effect exception. *Galaviz*, 296 Kan. at 184; see also *Mickens*, 535 U.S. at 165 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 [1980]). Under the *Cuyler* test, the defendant must demonstrate counsel labored under an active conflict of interest that

20

affected the adequacy of the representation. *Galaviz*, 296 Kan. at 183-84. This test differs from the *Strickland* standard in that "'prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown.'" 296 Kan. at 184.

The State argues no remand is required because the hearing on McDaniel's first motion establishes there was no conflict of interest between McDaniel and Parker and because his second motion for substitute counsel was granted. We agree. To apply the *Cuyler* standard, he must show "'both an actual conflict of interest and an adverse effect.'" *Mickens*, 535 U.S. at 165. He does not meet this burden.

McDaniel conflates "conflict" in the sense of disagreements with Parker with the Sixth Amendment concept of "conflict of interest" in stressing Parker's lack of contact with him, his own lack of trust in her, and her refusal to advocate his pro se motion based on her belief it was frivolous. But in general, an actual conflict case arises when "counsel breaches the duty of loyalty." *Strickland*, 466 U.S. at 692. The record does not reflect such a breach occurred.

At the hearing on the first written motion to discharge Parker, McDaniel alleged only one way in which Parker's loyalties were divided, that she prioritized her other clients' cases over his. Before denying the motion, the district court heard McDaniel's complaints, Parker's explanation for the lack of contact, and Parker's statement that she would spend all the time she believed was professionally necessary on the case.

The record supports the trial court's implied conclusion that Parker's loyalty to her other clients did not create a conflict of interest. McDaniel's complaints sounded more in "deficient performance" than in "conflict of interest," and nothing in the trial court's inquiry revealed a danger that Parker's obligations to her other clients would put her in a

position to "contend for that which [her] duty to [McDaniel] require[d] [her] to oppose" or vice versa. See *Cuyler*, 446 U.S. at 356 n.3 (Marshall, J., concurring in part and dissenting in part).

McDaniel also claims a conflict arose because Parker advocated against him when she expressed her opinion on the merits of his pro se motion to dismiss the case based on defects in his arraignment. But that motion was not before the court at the preliminary hearing or the hearing on McDaniel's motion to discharge Parker. The court in *Pfannenstiel* distinguished between "an attorney truthfully recounting facts and . . . an attorney going beyond factual statements and advocating against the client's position" during "the inquiry into whether a defendant has demonstrated justifiable dissatisfaction with his attorney." *Pfannenstiel,* 302 Kan. at 766. Parker's explanation about her disagreement with her client did not require that substitute counsel be appointed.

The most McDaniel could say of the trial court's asserted failure to inquire into the disharmony between himself and Parker at the preliminary hearing, or of its failure to appoint replacement counsel in the face of irreconcilable conflict between Parker and himself at the hearing on his motion to discharge her, is that the court abused its discretion denying substitute counsel. This is not the same as a deprivation of the Sixth Amendment right to conflict-free counsel. See *Pfannenstiel*, 302 Kan. at 759-60 (noting justifiable dissatisfaction can be "'"demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant"'"); *State v. Hegwood*, 256 Kan. 901, 903, 888 P.2d 856 (1995) (whether dissatisfaction with appointed counsel warrants appointment of new counsel generally left to discretion of trial court); *State v. Ferguson*, 254 Kan. 62, 71, 864 P.2d 693 (1993) (lack of cooperation and communication between defendant and counsel does not itself constitute violation of Sixth Amendment right to counsel).

Having failed to demonstrate Parker labored under a conflict of interest, and having failed to demonstrate—or even to assert—Parker's representation at the preliminary hearing was deficient, McDaniel cannot obtain relief under either the *Cuyler* adverse effect test or the *Strickland* test, whichever might apply. Moreover, there is nothing to suggest Parker's representation of McDaniel during the preliminary hearing or at any other time before her removal could possibly have any effect on the trial outcome. McDaniel notably does not assert any trial errors that could be traced to Parker's representation before she was replaced. Accordingly, McDaniel is not entitled to relief on this claim.

## FELONY-MURDER INSTRUCTION APPROPRIATELY STATED THE LAW

McDaniel argues his felony-murder conviction must be reversed because the jury was "denied the ability to consider whether or not the murder was completed prior to the aggravated robbery." He contends the court should have instructed the jury that "whether the murder occurred within the res gestae [of the underlying felony] is a fact question for the jury." It is necessary to review what happened at trial.

*Additional Facts*

Prior to the close of evidence, both parties submitted requested jury instructions to the district court. The State's proposed instruction on the felony-murder charge read:

> "To establish this [first-degree murder] charge, each of the following claims must be proved:

23

"1. The defendant or another killed Ronald Wilson.

"2. The killing was done while defendant was committing or attempting to commit aggravated robbery.

"3. This act occurred on or about the 9th day of July, 2012, in Sedgwick County, Kansas."

McDaniel requested a nearly identical instruction, which differed in substance only by omitting "attempting" from the second element listed.

At the instruction conference, the trial court reconciled the State's proposed instruction, which would have required the jury to find the killing was done while defendant "was committing" aggravated robbery, and McDaniel's, which would have required the jury to find the killing was done while "in the commission of" aggravated robbery. Defense counsel said if he inadvertently used a prior version of the pattern instructions, the wording requested by the State was acceptable. After an off-the-record discussion, the court decided, "The only language that's going to be added is [']for whose conduct he is criminally responsible['] on paragraph 1." Based on this, the court instructed the jury:

"To establish this [first-degree murder] charge, each of the following claims must be proved:

"1. The defendant, or another for whose conduct the defendant is criminally responsible, killed Ronald R. Wilson.

"2. The killing was done while defendant was committing Aggravated Robbery.

24

"3. This act occurred on or about the 9th day of July, 2012, in Sedgwick County, Kansas."

*Standard of Review*

"When analyzing jury instruction issues, an appellate court follows a three-step process by: (1) Determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). Whether a party has preserved a jury instruction issue affects the reversibility inquiry at the third step. 302 Kan. at 752; see also K.S.A. 2015 Supp. 22-3414(3) ('No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.'). . . .

"At the second step, [the court] consider[s] whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. *Pfannenstiel*, 302 Kan. at 752." *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016).

McDaniel contends the trial court failed to include more particular language in its instructions but did not request or object to this alleged failure at trial. Therefore, the court's inquiry at the third step requires application of K.S.A. 2016 Supp. 22-3414(3)'s clear error standard for reversal. See *State v. Carter*, 305 Kan. 139, 160, 380 P.3d 189 (2016). To obtain reversal, McDaniel must "firmly convince [the court] that '"the jury would have reached a different verdict"' had the instruction been given." 305 Kan. at 163.

*Discussion*

*No Error was Invited*

The State initially argues McDaniel invited the instructional error, barring him from even raising this issue on appeal. The State contends McDaniel did so by "agree[ing] to the wording of the instruction at trial" and requesting the challenged instruction.

In *State v. Walker*, 304 Kan. 441, 445, 372 P.3d 1147 (2016), we held the invited error doctrine did not bar the defendant from arguing on appeal that the trial court erred in failing to instruct the jury on a lesser included offense. Defense counsel did not request the instruction be given and did not object when the trial court opined that the instruction was not warranted. In declining to apply the doctrine, we noted that "'[a] party must do more than simply fail to object to a district court's proposed jury instruction to risk application of the invited error doctrine.'" 304 Kan. at 444 (quoting *State v. Dern*, 303 Kan. 384, Syl. ¶ 4, 362 P.3d 566 [2015]). McDaniel's case is similar.

McDaniel does not challenge the trial court's use of the language he asked the court to use, and he does not challenge the absence of language he asked the court not to use. He argues instead that language neither party nor the judge contemplated should have been included in the instruction. With respect to the error he claims on appeal, all McDaniel did was fail to object to the instructions as given. We decline to apply the invited error doctrine under these circumstances.

*The Instruction Fairly and Accurately Stated the Law*

McDaniel appears to argue the felony-murder instruction was incomplete because it failed to inform the jury "whether the murder occurred within the res gestae is a fact question for the jury." He claims the instruction as given prevented the jury from considering whether the killing was completed before the aggravated robbery began.

To be legally appropriate, "an instruction must always fairly and accurately state the applicable law, and an instruction that does not do so would be legally infirm." *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). McDaniel argues now for more particular language in addition to the elements enumerated in the instruction that he does not claim was otherwise erroneous. In a similar situation in *State v. Pabst*, 273 Kan. 658, 44 P.3d 1230 (2002), a pre-*Plummer* case, the court analyzed whether it was an error for the district court to refuse to elaborate on the definition of premeditation given. The test the court applied was "whether the instruction given properly and fairly stated the law as applied to the facts of the case." 273 Kan. at 659.

Felony murder is "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony." K.S.A. 2016 Supp. 21-5402(a)(2). The statute requires two elements of causation: (1) "[T]he death must occur within the res gestae of the underlying felony"; and (2) "there must be a direct causal connection between the felony and the homicide." *State v. Phillips*, 295 Kan. 929, 940, 287 P.3d 245 (2012). "Res gestae refers to acts that occurred '"before, during, or after the happening of the principal occurrence when those acts are so closely connected with the principal occurrence as to form, in reality, a part of the occurrence."'" 295 Kan. at 940. Moreover, "[a] direct causal connection exists unless an extraordinary intervening event supersedes the defendant's act and becomes the sole legal cause of death." 295 Kan. at 941. The existence of a direct causal connection turns on the "time, distance, and the

27

causal relationship between the underlying felony and the killing." 295 Kan. at 941. The instruction given in the present case comports with the applicable pattern instruction. See PIK Crim. 4th 54.120.

> "'If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the district court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed.' *State v. Dixon*, 289 Kan. 46, Syl. ¶ 1, 209 P.3d 675 (2009)." *State v. Bernhardt*, 304 Kan. 460, 470, 372 P.3d 1161 (2016).

The instructions given permitted a guilty verdict only if the jury concluded Wilson was killed "while" McDaniel was committing aggravated robbery. But contrary to McDaniel's argument, the instruction he now requests would not have "allowed the jury to consider whether the murder had been completed prior to the act of robbery." The jury was required to consider this possibility when determining whether the shooting occurred "while" McDaniel "was committing [a]ggravated [r]obbery." See *State v. Jackson*, 280 Kan. 541, 551, 124 P.3d 460 (2005) (noting requirement that jury find killing done "*while*" felony being committed necessitated acquittal if jury believed felony was completed or abandoned before victim was killed).

The trial court did not err by failing to instruct the jury with the additional language McDaniel requests because the instruction given fairly and accurately stated the law and accordingly was legally appropriate. Moreover, McDaniel does not attempt to persuade the court the verdict would have differed but for the absence of the language he proposes in the instruction. See *Carter*, 305 Kan. at 160 (clear error standard for reversal). Such an argument would not be persuasive, given McDaniel's confession that the killing occurred in the course of a planned robbery.

Affirmed.

ROSEN, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]



[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 112,513 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.