NOT DESIGNATED FOR PUBLICATION

No. 122,386

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GREGORY NICKS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed June 10, 2022. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and GARDNER, JJ.

HILL, J.: Alleging his trial attorney had a conflict of interest, Gregory Nicks appeals the dismissal of his collateral attack on his convictions for four counts of sexual exploitation of a child. Nicks argues that his lawyer's concurrent representation of himself in his criminal prosecution while he was representing some others who were investigating a possible civil action for damages against Sedgwick County, Kansas, somehow impeded his representation of Nicks. After receiving evidence on the motion, the district court ruled his counsel had no active conflict of interest and was not ineffective. Based on our

1

review of the record, we find no evidence that any claimed conflict of interest of his attorney affected that attorney's representation of Nicks. Thus, we affirm the court's dismissal of his K.S.A. 60-1507 motion.

*Case History*

Nicks is serving two consecutive hard 25 life sentences after pleading guilty to four counts of sexual exploitation of a child. He entered his pleas after reaching an agreement with the State. In exchange for his pleas, the State dismissed two charges of aggravated indecent liberties with a child and recommended Nicks receive the presumed life sentences for each count with two of them to be served consecutively.

Nicks asked the district court to depart from these presumptive sentences. Instead, he asked for a determinate sentence under the sentencing grid. The court denied Nicks' motion for departure and did not address his departure arguments. The district court sentenced Nicks to serve 25 years for each count before he was eligible for parole and ordered two of the sentences to be served consecutively.

Nicks appealed the denial of his departure motion and the court's order for two of his sentences to be served consecutively. A panel of this court affirmed Nicks' sentences. *State v. Nicks*, No. 110,330, 2014 WL 5849224 (Kan. App. 2014) (unpublished opinion).

After that, Nicks pursued a collateral attack on his convictions by filing a motion for relief under K.S.A. 60-1507. In his motion, Nicks argued that Mark Shoenhofer, one of his trial attorneys, had a conflict of interest that affected his representation of Nicks during his plea and sentencing. He contended that a conflict existed because Shoenhofer represented some inmates at the Sedgwick County Jail in their potential civil lawsuit against Sedgwick County and the Sheriff's Department. The potential lawsuit alleged that a jailer named David Kendall raped and sexually abused J.T., an inmate.

2

Nicks pointed out that before Shoenhofer represented Nicks, Nicks had provided police with information that bolstered the jailer's version of events and thus harmed Shoenhofer's clients' case. In fact, Nicks testified in the jailer's case that the inmate, J.T., had stated that he had not been raped. J.T. said that he let Kendall, the jailer, have sex with him and then J.T. put on a handcuff and screamed rape. In Nicks' view, this testimony harmed Shoenhofer's fiduciary interest in recovery from his potential civil lawsuits.

Nicks argued the conflict affected Shoenhofer's representation of him in two ways:

(1) Shoenhofer intentionally did not mention Nick's assistance to police in their investigation of the jailer in his motion to depart; and
(2) the plea agreement Shoenhofer negotiated for Nicks did not accord him any benefit because he received two consecutive hard 25 life sentences.

Nicks stated generally that the conflict of interest impacted Shoenhofer's representation to Nicks' detriment.

The district court took testimony on the motion. At that hearing, Nicks, Shoenhofer, and Roger Falk, an attorney who had once represented Nicks in this prosecution, testified. Afterwards, the court issued a carefully prepared order denying Nicks any relief. The court found that Nicks did not meet his burden to show that Shoenhofer actively represented conflicting interests, nor did he show any adverse effects on his representation.

*The district court gave several explanations in its order.*

The court held that while there was concurrent representation of Nicks and the jailer's accusers, there was no active conflict of interest during that representation. The

3

court ruled that Shoenhofer credibly testified that his representation of Nicks was not limited by a personal interest in the potential federal lawsuit, and it was apparent to the court that Shoenhofer was fully committed to Nicks' defense. The court also noted that Shoenhofer was still investigating the civil lawsuit while representing Nicks. The court held that any information about the validity or credibility of a client's claim helps an attorney in evaluating the potential for success of a lawsuit. In other words, it is helpful for attorneys to discover evidence that their client may not be telling the truth before filing a lawsuit. Forewarned is forearmed.

The court held that there was no reasonable basis to believe that Shoenhofer had anything to gain by not mentioning Nicks' cooperation in the Kendall investigation in his departure motion. The information about J.T. was already known to exist and could be used to undermine J.T.'s lawsuit whether Shoenhofer referred to Nicks' cooperation in the departure motion or not. There was no incentive to not mention Nicks' cooperation.

The court said that while Shoenhofer testified, in retrospect, he should have included that information in the motion, that alone cannot prove Nicks' claim that Schoenhofer intentionally failed to mention Nicks' assistance to the police. The court found that leaving that information out of the motion was not a purposeful mistake and did not affect Nicks receiving consecutive hard 25 sentences.

Addressing Nicks' claim that Shoenhofer was ineffective for failing to include Nicks' assistance to police in the Kendall investigation, the court noted that Shoenhofer did categorically address and argue Nicks had cooperated with police.

> "The beneficial difference between two and three instances of cooperation, even when the omitted third instance was the only one that provided a benefit, is minimal. This is especially true in the context of Mr. Nicks' burden to show an adverse effect on the quality of Mr. Shoenhofer's representation."

4

The district court noted that the sentencing judge merely followed the State's recommendation and rejected the defense's proposed sentence. The court said there was no evidence to suggest that informing the sentencing court of a third instance of Nicks' assisting the police would have led to a different sentence, particularly with the egregious facts of Nicks' crimes.

Nicks appeals the denial of this motion, claiming the district court erred in finding that Schoenhofer had no conflict of interest and that he was credible.

*The rules that guide us are well established.*

We review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *Balbirnie v. State*, 311 Kan. 893, 897-98, 468 P.3d 334 (2020).

Substantial competent evidence is that evidence which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021). When we review a district court's factual findings we do not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. 313 Kan. at 486-87.

The grounds for relief in this motion was ineffective assistance of counsel. To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must show:  (1) counsel's performance was deficient; and (2) prejudice. *Khalil-Alsalaami*, 313 Kan. at 485.

Nicks argues that his lawyer was ineffective because of a conflict of interest. To prevail on an ineffective assistance of counsel claim based on a conflict of interest, a defendant must prove one of three types of conflicts recognized by the courts. They are:

     (1) the automatic reversal exception;

     (2) the adverse effect exception; and

     (3) the *Mickens* reservation.

In all three categories the defendant must establish that their attorney had an active conflict of interest. *State v. Moyer*, 309 Kan. 269, 279, 434 P.3d 829 (2019). Nicks claims that Shoenhofer had a conflict of interest that fell into the second and third categories. We will explain more.

The adverse effect exception applies when there is an active conflict of interest because of concurrent representation of codefendants but there was no objection to the conflict of interest before or during the proceeding. In that situation the defendant must show that the conflict of interest affected the adequacy of their representation. *State v. Galaviz*, 296 Kan. 168, 183-84, 291 P.3d 62 (2012). Under the adverse exception test, prejudice is presumed if the conflict has significantly affected counsel's performance, making the verdict unreliable, even though *Strickland* prejudice cannot be shown. *Galaviz*, 296 Kan. at 184.

The *Mickens* reservation applies when a conflict is "'rooted in counsel's obligation to *former* clients'" or "'counsel's personal or financial interests.'" *Galaviz*, 296 Kan. at 184 (quoting *Mickens v. Taylor*, 535 U.S. 162, 174, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). The *Mickens* Court recognized the potential conflict of interest in such situations but chose not to articulate a test to determine if a defendant is entitled to relief. The Court suggested the adverse effect exception test or the *Strickland* test may apply but left it an open question. 535 U.S. at 176; *Galaviz*, 296 Kan. at 184.

6

As a practical matter, Kansas courts have applied the adverse effect exception to cases that fall within the *Mickens* reservation with no further discussion or explanation. See *State v. Prado*, 299 Kan. 1251, 1260, 329 P.3d 473 (2014); *Boldridge v. State*, 289 Kan. 618, 627-28, 215 P.3d 585 (2009). As a result, our analysis of any conflict of interest here will be the same under both subcategories claimed by Nicks.

*Some observations on the law of conflicts of interests.*

Our system of legal representation rests on a foundation of an attorney's loyalty to the client's cause and trust in the attorney's abilities and actions. Both loyalty and the effectiveness of legal efforts are questioned when an attorney has two clients with differing interests. Which client's interests are being served? One? The other? Both? Neither? Because such questions are unanswerable, an attorney must withdraw from these types of conflicts if there is no informed consent by the client for continued representation. Likewise, caselaw also recognizes that an attorney's personal interests may conflict with the client's goals. In such cases, the attorney must withdraw unless there is informed consent by the client for continued representation.

The law of conflicts also recognizes the changing nature of legal interests. The passage of time and circumstances can cause conflicts to appear and disappear. This is why the cases speak of an "active" conflict of interest. By active, we mean, "currently in operation, in effect, in progress." Websters New World College Dictionary 14 (5th ed. 2014. Thus, we evaluate this case to determine whether Schoenhofer had an active conflict of interest. If he did, then it casts doubt on his representation of Nicks. If he did not, then there is no basis to grant Nicks any relief on this point.

Conflicts of interest are defined by our Kansas Rules of Professional Conduct. In Kansas, KRPC 1.7 says a concurrent conflict of interest exists when:

7

"(1) the representation of one client will be directly adverse to another client; or

"(2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." KRPC 1.7 (2022 Kan. S. Ct. R. at 342).

Nicks says there was a conflict for two reasons: (1) He would likely be a witness in the civil lawsuit and Shoenhofer would have to call either Nicks or J.T. a liar in court; and (2) Shoenhofer could not make a record that he knew Nicks told police J.T. was lying because it could require him to withdraw from both cases.

The State argues to the contrary and says that Nicks' arguments are only a continuation of the arguments that the district court rejected and that Nicks is merely asking this court to reweigh the evidence in his favor. The State points out that the district court was in the best position to determine Shoenhofer's credibility at the evidentiary hearing.

In our view, the district court's finding that there was no active conflict of interest during Shoenhofer's representation of Nicks is supported by substantial competent evidence. Nicks has failed to show an active conflict of interest.

The parties agree that Shoenhofer represented Nicks and J.T. at the same time. But while Shoenhofer was representing Nicks, he was simply investigating the circumstances of J.T.'s civil case and had not yet sued anyone. At that point, Nicks had provided detectives with information about J.T.'s credibility and had testified in the jailer's case. Although there is no doubt he could be called as a witness for the State in the future, Nicks was not yet subpoenaed as a witness and the lawsuit had not even been filed yet.

It is true that Shoenhofer's concurrent representation of Nicks and J.T. had the potential to lead to a conflict of interest in the future. If J.T.'s civil case went to trial and

8

Nicks testified against him and Shoenhofer had to cross-examine Nicks, Schoenhofer would clearly have a conflict then. But none of those issues were present while Shoenhofer represented Nicks. There was no active conflict of interest while Shoenhofer represented Nicks in his prosecution. The outcome of J.T.'s claims against Sedgwick County and the jailer did not affect Nicks' prosecution because Nicks' case was adjudicated before any civil lawsuit for damages was filed.

The potential issues Shoenhofer would face if a conflict of interest developed—having to cross-examine Nicks—would limit his ability to perform in J.T.'s civil case but would not have affected his ability to represent Nicks in an unrelated criminal matter. Simply put, no evidence relating to J.T. would have been relevant in Nicks' criminal prosecution other than the fact of Nicks' cooperation with police in the Kendall investigation.

We must also point out that the evidence showed there was no substantial risk that Shoenhofer's representation of J.T. and personal interest in any civil monetary damages would materially limit his representation of Nicks. The district court found Shoenhofer's testimony credible that his representation of Nicks was not limited by a personal interest in a potential lawsuit. As we said before, we do not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *Khalil-Alsalaami*, 313 Kan. at 486-87.

The district court's finding that Shoenhofer's representation of J.T. did not affect the adequacy of his representation of Nicks is supported by substantial competent evidence. The district court based its decision on Shoenhofer's testimony at the evidentiary hearing that it was a mistake to leave the information about Nicks' cooperation in the Kendall investigation out of the motion for departure but it was not purposeful. The district court found that Shoenhofer's testimony was credible and "that his representation of Nicks was not materially limited by any desire associated with

9

investigating a federal case on behalf of Mr. Taylor." Again, we will not reweigh the credibility of witnesses. Shoenhofer testified that leaving Nicks' cooperation in the Kendall investigation out of the motion to depart was a mistake and not motivated by his civil case. In summary, there was no evidence presented that Shoenhofer's conflict of interest affected his representation of Nicks.

With this record, we must affirm the district court's dismissal of Nicks' motion under K.S.A. 60-1507.

Affirmed.

* * *

ATCHESON, J., concurring:  I agree the Sedgwick County District Court properly denied Gregory Nicks any relief on his habeas corpus motion and, therefore, concur in our ultimate decision to affirm the ruling. But the lawyer Nicks retained to represent him at his sentencing appears to have had an active conflict of interest then under what has been called the *Mickens* reservation. *Mickens v. Taylor*, 535 U.S. 162, 166-67, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002); *Sola-Morales v. State*, 300 Kan. 875, 884, 335 P.3d 1162 (2014). As I explain, the lawyer had what looks like a professional and financial interest weighing against offering some evidence supporting the request for a reduced sentence he sought for Nicks. Given what the lawyer actually did present on Nicks' behalf, however, the omitted evidence would have made no tangible difference, so Nicks cannot show any negative effect on the adequacy of his legal representation. For that reason, he is entitled to no relief on the motion he filed under K.S.A. 60-1507.

A lawyer representing a criminal defendant has a conflict if he or she has a personal or financial interest running contrary to the client's advantage in that matter. Here, that appears to be true of Mark Shoenhofer when he took over the representation of

10

Nicks from Roger Falk. By then, Nicks—with Falk's knowledge and encouragement as part of a strategy to secure a favorable plea deal from the State—told law enforcement officers about drug trafficking in the Sedgwick County Jail, where he was a pretrial detainee, and in the greater Wichita community generally. In addition, Nicks informed the officers that J.T., another detainee in the jail, had boasted about falsely accusing a jailer of sexually assaulting him. According to Nicks, J.T. described his interactions with the jailer as consensual.

Before agreeing to represent Nicks, Shoenhofer had signed contracts to represent J.T. and three other detainees to help them obtain financial compensation from Sedgwick County because the jailer allegedly had sexually assaulted each of them while they were in custody. In pursuing those claims, Shoenhofer might have had to file a civil action for battery, constitutional torts, and possibly other grounds to recover money damages. Shoenhofer agreed to represent J.T. and the others on a contingent-fee basis, meaning he would be compensated for his work only if he obtained a settlement or judgment for them. In that litigation, Nicks likely could be a witness Sedgwick County would use to impugn J.T.'s credibility.

Shoenhofer was aware of Nicks' cooperation with the law enforcement officers as he simultaneously pursued a favorable disposition of the criminal charges against Nicks and developed the civil case for J.T. and the other inmates. Under the circumstances, the conflict of interest seems quite real and immediate to me rather than some potential legal antagonism that might develop later, as the majority would have it.

In this case, Shoenhofer conceded he made a "mistake" in failing to disclose to the district court the information Nicks provided law enforcement officials about J.T.'s admissions concerning the jailer. Shoenhofer viewed Nicks' representation on that score as another instance of cooperation warranting a reduced sentence. But Shoenhofer's failure to tell the district court about it would have been a mistake only if Shoenhofer, as

11

an officer of the court, had a good-faith basis to believe Nicks was being truthful. At the same time, Shoenhofer had professional and pecuniary interests in J.T.'s claim for damages—interests that would be impaired if Nicks were a truth-teller. The problem here is particularly acute because it rests on Nicks' truthfulness about one specific factual circumstance, and Shoenhofer recognized an obligation in this case to promote that truthfulness, whereas his and J.T.'s interests would have been served in attacking that truthfulness. It's not apparent to me that Shoenhofer's later decision to drop J.T. as a client undid the conflict while he was handling Nicks' sentencing.

Assuming Shoenhofer indeed labored under a conflict of the sort falling within the *Mickens* reservation, Nicks would have to show some adverse effect on his legal representation to prevail on his 60-1507 motion. The Kansas Supreme Court has been noncommittal about the standard for assessing prejudice for those conflicts. See *State v. Moyer*, 309 Kan. 268, 279-80, 434 P.3d 829 (2019) (recognizing lack of governing standard for conflicts under *Mickens* reservation); *State v. Lindsay*, No. 117,826, 2019 WL 2399477, at *7 (Kan. App. 2019) (unpublished opinion) (noting Kansas Supreme Court has treated *Mickens* reservation standard as unresolved issue). The applicable standard is either the prejudice test drawn from *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), requiring the movant to show a reasonable probability of a different outcome in the underlying criminal case, or the less demanding test drawn from *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), requiring a demonstrably adverse effect in the criminal case. For purposes of this appeal, I assume the adverse effect test should be used, if only because it is more favorable to Nicks.

Even so, Nicks' 60-1507 motion fails unless Shoenhofer's conflict diminished the legal representation he provided in a way having at least some measurable effect on the outcome. Otherwise, the conflict would be legally harmless. *Moyer*, 309 Kan. at 284-85; *Sola-Morales*, 300 Kan. at 884. Nicks falters on this component of his claim.

First, Nicks' statements concerning the admissions J.T. made may not be an appropriate factor supporting a downward sentencing departure. A district court can consider a defendant's cooperation with law enforcement as reason to impose a lesser sentence. See K.S.A. 2020 Supp. 21-6615(e) (statute governing sentencing under guidelines expressly permits prosecutor to request mitigated punishment based on defendant's "substantial assistance in the investigation or prosecution of another person who is alleged to have committed an offense"); *State v. Campbell*, 273 Kan. 414, 425, 44 P.3d 349 (2002). A defendant's cooperation typically entails working as an undercover operative or otherwise providing evidence in one or more criminal investigations commonly involving charges against third parties. A defendant may also seek a mitigated sentence for "cooperating" in his or her own prosecutions by entering a plea early on without requiring the State to call witnesses at a preliminary hearing or a trial. But Nicks' cooperation regarding J.T. had a distinctly different tenor. He provided information that might have been of use to Sedgwick County in defending against a civil action for damages. It is hardly clear that would have been a legally proper consideration for a reduced sentence at all.

Second, even assuming Nicks' information about J.T. might have been considered at sentencing, there is nothing to suggest it would have made any difference. Shoenhofer did apprise the district court of Nicks' cooperation in supplying information to law enforcement about criminal trafficking in illegal drugs in the county jail and in the Wichita area generally. The district court found that activity insufficient to warrant any sentencing reduction. Nothing suggests Nicks' information about J.T. would have tipped the scales toward or independently commanded a sentencing reduction, especially given the seriousness of his crimes of conviction. In short, Nicks can show no prejudice resulting from any conflict Shoenhofer might have had, and the district court, therefore, properly denied his 60-1507 motion.

13